**PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Name  BOONE           DONALD          W.
      (Last)          (First)         (Initial)

Prisoner Number  D-37952

Institutional Address  Correctional Training Facility
P.O. Box 689, Soledad, CA 93960

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DONALD W. BOONE )
(Enter the full name of plaintiff in this action.) )
 )
vs. )   Case No. _C 07 4724 PJH__
 )   (To be provided by the clerk of court)
ARNOLD SCHWARZENEGGER, Governor, )
 )   (PR)
State of California, )   PETITION FOR A WRIT
 )   OF HABEAS CORPUS
 )
 )
 )
(Enter the full name of respondent(s) or jailor in this action) )

Read Comments Carefully Before Filling In

<u>When and Where to File</u>

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS          - 1 -

Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack was entered.

A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1. What sentence are you challenging in this petition?

    (a) Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

San Bernardino County Superior Court,   Barstow

Court                                Location

    (b) Case number, if known __BCR-667__

    (c) Date and terms of sentence __8/22/1986, 15 years to life__

    (d) Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.)     Yes __XX__    No _____

         Where?

         Name of Institution: __Correctional Training Facility__

         Address: __P.O. Box 689, Soledad, CA 93960__

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

Second degree murder / Penal Code § 187

PET. FOR WRIT OF HAB. CORPUS          - 2 -

1  3. Did you have any of the following?

2      Arraignment:              Yes _____  No _____
3      Preliminary Hearing:      Yes _____  No _____
4      Motion to Suppress:       Yes _____  No _____

5  4. How did you plead?

6      Guilty _____   Not Guilty _____   Nolo Contendere _____

7      Any other plea (specify) _____

8  5. If you went to trial, what kind of trial did you have?

9      Jury _____   Judge alone _____   Judge alone on a transcript _____

10 6. Did you testify at your trial?                Yes _____   No _____

11 7. Did you have an attorney at the following proceedings:

12     (a)   Arraignment                            Yes _____   No _____
13     (b)   Preliminary hearing                    Yes _____   No _____
14     (c)   Time of plea                           Yes _____   No _____
15     (d)   Trial                                  Yes _____   No _____
16     (e)   Sentencing                             Yes _____   No _____
17     (f)   Appeal                                 Yes _____   No _____
18     (g)   Other post-conviction proceeding       Yes _____   No _____

19 8. Did you appeal your conviction?               Yes _____   No _____

20     (a)   If you did, to what court(s) did you appeal?

21           Court of Appeal                        Yes _____   No _____
22           Year: _____   Result: _____
23           Supreme Court of California            Yes _____   No _____
24           Year: _____   Result: _____
25           Any other court                        Yes _____   No _____
26           Year: _____   Result: _____

27

28     (b)   If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS        - 3 -

| | | | | |
|---|---|---|---|---|
|1| |petition?|Yes ✓|No___|
|2|(c)|Was there an opinion?|Yes ___|No___|
|3|(d)|Did you seek permission to file a late appeal under Rule 31(a)?| | |
|4| | |Yes ___|No___|

If you did, give the name of the court and the result:

_____

_____

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?  Yes _xx_  No___

   [Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. §§ 2244(b).]

   (a) If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

   I. Name of Court: San Bernardino County Superior Court

   Type of Proceeding: Habeas Corpus

   Grounds raised (Be brief but specific):

   a. _____SAME AS RAISED HEREIN_____

   b. _____

   c. _____

   d. _____

   Result: Denied                           Date of Result: 5/3/2007

   II. Name of Court: Calif. App. Court, 4th App. Dist.

   Type of Proceeding: Habeas Corpus

   Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS        - 4 -

a. SAME AS RAISED HEREIN
b. _____
c. _____
d. _____

Result: Denied            Date of Result: 6/12/2007

III. Name of Court: California Supreme Court
Type of Proceeding: Petition for Review
Grounds raised (Be brief but specific):

a. SAME AS RAISED HEREIN
b. _____
c. _____
d. _____

Result: Denied            Date of Result: 8/8/2007

IV. Name of Court: _____
Type of Proceeding: _____
Grounds raised (Be brief but specific):

a. _____
b. _____
c. _____
d. _____

Result: _____   Date of Result: _____

(b) Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes XX    No____

Name and location of court: Fed. Dist. Ct. N. Dist. Calif.
Case No. C 06- 01161 PJH (PR)

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS         - 5 -

need more space. Answer the same questions for each claim.

### Claim I

**IT WAS A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION FOR THE GOVERNOR OF THE STATE OF CALIFORNIA TO REVERSE PETITIONER'S GRANT OF PAROLE BY THE BOARD OF PAROLE HEARINGS WHEN OVER TWO DECADES AFTER THE COMMITMENT OFFENSE THERE IS NO EVIDENCE THAT PETITIONER IS A <u>CURRENT</u> THREAT TO PUBLIC SAFETY.**

---

COMES NOW Donald W. Boone (hereafter Petitioner) with the facts in support of his claim. For the sake of argument, Petitioner concedes to the facts of the offense itself as presented by the governor in his decision dated December 21, 2006 (EXHIBIT 1) reversing Petitioner's finding of suitability of parole by the Board of Parole Hearings (hereafter Board) (EXHIBIT 2). Whether or not other "facts" as presented by the governor are true--many are not and are nothing more than lies by Petitioner's wife and hearsay--one thing is true: Petitioner killed his wife with a 12 gauge shotgun, pulling the trigger on both barrels at once, killing her instantly, then reloading and shooting himself.

Petitioner was a 14 year veteran of the Marine Corps. On April 18, 1986 Petitioner returned home from overseas deployment with the Marine Corps for 12 months (EXHIBIT 2, HT 16).[1/] When Petitioner entered his home he found his wife, Nhung Boone, in her bathrobe and in the arms of her paramour, kissing. Not only did Petitioner find his wife in the arms of another man, but over the next few days he found out that his wife was neglecting their 7 year old daughter and prostituting herself, bringing strange men home and having sex

---

1. References to parole hearing transcript, EXHIBIT 2, will be noted by HT followed by page number, e.g., (HT 1).

with them while their 7 year old daughter was in the home, even receiving a detailed letter from her paramour of her sexual exploits (EXHIBIT 3). Even so, after all that, Petitioner forgave his wife and tried to reconcile the marriage, but she rebuffed his pleas, telling him she can see whoever she wants.

Petitioner was charged with one count of second degree murder in violation of Penal Code § 187,[2/] the unlawful killing of a human being with malice aforethought (EXHIBIT 4). Pursuant to Penal Code § 1192.1, Petitioner entered a plea of guilty to second degree murder (EXHIBIT 5), with the understanding that he would have a parole period "of three or four years" (EXHIBIT 5, p. 3).

Petitioner was found suitable for parole in 2001, then Governor Davis reversed the decision on March 19, 2002 (EXHIBIT 6). Petitioner continued to program in an exemplary manner, receiving only a CDC 115 for refusing to move into a dorm to avoid a physical conformtation with skin heads who previously threatened Petitioner.

In 2004, two forensic experts, Dr. Stack and Dr. Zika, completed a psychological evaluation (EXHIBIT 7). This is the psychological evaluation the Board relied on when finding Petitioner suitable for parole (EXHIBIT 2, HT 62-64, 99-101). Petitioner received a Global Assessment of Functioning (GAF) Score of 90 (EXHIBIT 7, p. 2), and the evaluation documented the many therapy and self-help groups Petitioner completed (Id., at pp. 2-3). "If released to the community, his violence potential is estimated to be no more than the average citizen in the community. This assessment echoes the conclusion of Dr. Terrini in his 2000 board report" (Id., at p. 3).

---

2. All statutes and regulations are California, unless otherwise noted.

The first reason Governor Schwarzenegger reversed the Board's decision is the commitment offense, "the second-degree murder for which Donald Boone was convicted was especially grave, considering the level of premeditation involved" (EXHIBIT 1, p. 2). The governor then relies on third-hand hearsay taken from a police report, Ms. Flores stating that Mrs. Boone told her that Petitioner sent his wife "flowers and a note that read, 'we lived together or die together'" (Id.). THAT IS AN ABSOLUTE LIE on his wife's part. Neither did Petitioner "order[] Nhung and her two daughters out of the house, and threatened to kill Nhung if she did not leave" (Id., at p. 1). That too is a lie. It is true that Petitioner, at the end of his ropes and emotionally strained, wrote out a will as the governor states. Petitioner did not, however, kill his wife as the governor states, but rather made one last plea to save the marriage.

The second reason the governor gives is: "Mr. Boone told the 2006 Board that the 'commitment offense was committed as a result of significant martial stress.' The 2006 Board, however, did not find the offense was the result of significant stress" (EXHIBIT 1, p. 2). Apparently the governor, or whoever writes his decisions, did not read the record, because the Board, indeed, found, the offense "was a one time occurrence and that you acted irrationally" (EXHIBIT 2, HT 101); and, "[i]n mitigation we noticed that the crime was committed during an unusual situation unlikely to reoccur...psychological reports...all indicated that this seemed like just a one time thing...during a brief period of extreme mental and emotional trauma (EXHIBIT 2, HT 104).

The third and final reason the governor gives is: "Mr. Boone's

parole plans remain unsettled" (EXHIBIT 1, p. 2), noting Petitioner last resided in San Bernardino County, but "made plans to live and work in Santa Cruz County. The 2006 Board, however, did not approve his transfer to Santa Cruz County" (Id.).

The governor continued, "although Mr. Boone applied to transfer his parole supervision to New Jersey, it is uncertain whether the request will be granted. It is essential to Mr. Boone's success on parole that he have a place to live and a legitimate way to provide financial support for himself immediately upon release" (Id.).

While the governor stated that Petitioner's parole transfer to New Jersey "remains unsettled" and "it is uncertain whether the request will be granted" (EXHIBIT 1, p. 2), New Jersey's response was not due until January 4, 2007, but the governor's staff rubber stamped his signature on December 21, 2006. New Jersey DID accept Petitioner's transfer.

In 2002, one of the reasons Governor Davis used to reverse Petitioner's 2001 grant of parole was that Petitioner "has not completed the necessary forms required for approval of transfer" (EXHIBIT 6, pp. 2-3), when Petitioner did indeed fill out and submit the forms and they were in Petitioner's file, raising the question of what file does the governor review, or even receive.

Based upon the facts and circumstances of the commitment offense, the victim being Petitioner's wife providing the motive (EXHIBIT 2, HT 103-104), the Board fixed Petitioner's net term, after deducting postconviction credits, at 168 months (HT 105), or, 13 years 8 months. Petitioner was, at that time, over 6 years past his release date.

The Superior Court of California, County of San Bernardino,

summarily denied Petitioner's habeas corpus petition on May 3, 2007 (EXHIBIT 8). The superior court ignores the motive and stress Petitioner was under, simply concluding this was "a needless and senseless killing of the Petitioner's wife because she wanted to terminate the marriage to the Petitioner" (EXHIBIT 8, p. 1).

The Appellate Court of California, Fourth Appellate District summarily denied Petitioner's habeas corpus, without opinion, on June 12, 2007; and, the California Supreme Court, without opinion, denied Petitioner's Petition for Review on August 8, 2007.

\* \* \* \* \* \* \*

If any of these grounds was not previously presented to any other court, state briefly which grounds were not presented and why:

All grounds have been exhausted.

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

SEE MEMORANDUM OF LAW ATTACHED HERETO, PAGES 12-17

Do you have an attorney for this petition?    Yes____   No _X_

If you do, give the name and address of your attorney:

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on _9 September 07_.        _Donald W. Boone_
        Date                          Donald W. Boone
                                      Signature of Petitioner

(Rev. 6/02)

## M E M O R A N D U M   O F   L A W

### JURISDICTION OF THE COURT

Review under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) is deferential. The writ may be granted where the state court actions "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" (28 U.S.C. § 2254(d)).

Petitioner has a "liberty interest" in parole (In re Lawrence, 150 Cal.App.4th 1511 (2007), citing inter alia, Greenholtz v. Inmates of Nebraska Penal and Correctional Complex (herefter Greenholtz), 442 U.S. 1 (1979); Superintendent v. Hill (hereafter Hill), 472 U.S. 445 (1985); Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003); Sass v. California Board of Prison Terms (hereafter Sass), 461 F.3d 1123 (9th Cir. 2006); Irons v. Carey, 479 F.3d 658 (9th Cir. 2007).

When a "liberty interest" attaches to a government action depriving one of his or her liberty, the United States Supreme Court has opined that "some evidence" is used "as a standard of review, not as a standard of proof" (Hamdi v. Rumsfeld, 452 U.S. 507, 537 (2004); see In re Morrall, 102 Cal.App.4th 280, 302 (2002); California Evidence Code, § 115; Calif. Code Regs., tit. 15, § 2000(b)(50)). Thus, significant to the primary determination, was the proper "standard of proof" applied? An EVIDENTIARY HEARING is required to determine what "standard of proof" the Board applies in parole suitability determinations.

On judicial review, although the "some evidence" standard may apply, "it is not just 'some evidence' to support the Governor's findings, but 'some evidence' sufficient to satisfy the statute's ultimate test, that is, 'some evidence' the release of Lawrence would subject society to an 'unreasonable risk' of danger to public safety" (In re Lawrence, 150 Cal.App.4th, at 1544, supra). "The test is...whether some evidence indicates a parolee's release <u>unreasonably endangers public safety</u>" (In re Lee, 143 Cal.App.4th 1400, 1408 (2006), emphasis in original, Petition for Review denied, depublication denied). The Executive "must remain focused not on the circumstances that may be aggravating in the abstract but, rather, on facts indicating that release <u>currently</u> poses 'an unreasonable risk of danger to society' (§ 2402, subd. (a); accord, Pen.Code, § 3041, subd. (b))" (In re Elkins, 144 Cal.App.4th 475, 499 (2006), emphasis added, Petition for Review denied, depublication denied). In other words, "whether the inmate will be able to live in society <u>without committing additional antisocial acts</u>" (In re Lawrence, supra, 150 Cal.App.4th, at 1543). Thus, the focus is to be on CURRENT parole risk, not a risk two decades in the past.

A. <u>The Commitment Offense Is No Longer Evidence of Current Threat to Public Safety</u>.

Petitioner had completed his minimum eligible parole date (MEPD) on December 4, 1996 (EXHIBIT 1, HT 2), ten (10) years prior to his 2006 parole suitability hearing. Petitioner had satisfied the 15 bottom end of his sentence of 15 years to life on July 9, 2002. Thus, the commitment offense being more than twenty years behind Petitioner, and surpassing his MEPD and minimum term by several years, the commitment offense has lost its predictive value (<u>Greenholtz</u>,

442 U.S., at 10, supra [offense is relative to time, "entailing primarily what a man is and what he may become rather than simply what he has done"]; Moody v. Daggett, 429 U.S. 78, 88-90 (1976) [postconviction record is one of the "most significant" factors of predicting parole suitability]; Irons v. Carey, 479 F.3d, at 665, supra [commitment offense is not reliable after serving minimum term]; Biggs v. Terhune, 334 F.3d, at 916-917, supra [commitment offense initially may be used to deny parole, but may violate due process to use after initial hearing; see also Willis v. Kane, 458 F.Supp.2d 1126, 1130 (N.D. Cal. 2007); Sanchez v. Kane, 444 F.Supp.2d 1049, 1062 (C.D. Cal. 2006); Rosenkrantz v. Marshall, 444 F.Supp.2d 1063, 1084-1086; Martin v. Marshall, 431 F.Supp.2d 1038, 1047 (N.D. Cal. 2006); In re Lawrence, 150 Cal.App.4th, at 1551, 1561; In re Barker, 151 Cal.App.4th 346, 372 (2007); In re Lee, 143 Cal.App.4th, at 1412, supra; In re Elkins, 144 Cal.App.4th, at 498, supra; Brown v. Kane, Slip Copy, 2007 WL 1288488, *4 (N.D. Cal. 5/2/07); Blankenship v. Kane, Slip Opinion, 2007 WL 1113798, *11 (N.D. Cal. 4/12/07)).

The Governor determined that Petitioner's offense "was especially grave, considering the level of premeditation involved" (EXHIBIT 1, p. 2). On April 22, 1986, Petitioner pled guilty to one count of second degree murder in violation of Penal Code § 187. This plea was pursuant to Penal Code § 1192.1 [a defendant cannot be punished for a crime greater than the degree he agreed to when entering into his contract with the state.] see also Blakely v. Washington, 542 U.S. 296, 299-300, 303-304 (2004); Santobello v. New York, 404 U.S. 257 (1971); Henderson v. Hogan, 426 U.S. 637 (1976); People v. Jermone, 160 Cal.App.3d 1087 (1984) [Petitioner can only be punished

for the elements of the offense as charged and agreed to];
Blaenkenship v. Kane, Slip Copy, 2007 WL 1113798, *7, supra ["the
Governor's characterization of Petitioner's actions as premeditated
is incorrect because the trial court found the offense was murder
in the second degree"]).

    Moreover, in addition to Petitioner's no prior criminal history
and exemplary postconviction behavior with a history of favorable
psychological evaluations by the forensic experts, which has to count
for something, the Governor claims that it was Petitioner who told
the Board the "commitment offense was committed as a result of
significant stress" (EXHIBIT 1, p. 2); and the Board "did not find
that the offense was the result of significant stress" (Id.).  That
is a gross factual error.  Although Petitioner did state he lost
all hope (HT 24), being under significant marital stress, it is indeed
the Board that uses stress as a suitability factor, the crime being
"committed during a brief period of extreme mental and emotional
trauma" referring to psychological evaluations by various forensic
experts (HT 104).  Did the Governor even read the transcript?  Did
he (his staff) even have the transcript?  See In re Cooper, ___
Cal.App.4th ___ (2007), 2007 WL 2164237, *16-17 (7/27/07) [the
Governor not reviewing the complete record is a per se due process
violation]).

    When there is any evidence of "stress" the Governor is "bound"
to consider that evidence in mitigation (In re Weider, 145 Cal.App.4th
570, 589-590 (2006); In re Lawrence, 150 Cal.App.4th, at 1560, supra;
In re Lee, 143 Cal.App.4th, at 1412, supra; In re Scott, 133
Cal.App.4th 573, 596 (2005)).

B.  Whether or Not Petitioner's Parole Plans for New Jersey Were "Unsettled" Is Not Evidence that Petitioner Is A CURRENT Threat To Public Safety.

The Governor stated that Petitioner's "parole plans remain unsettled. [] Furthermore, although Mr. Boone applied to transfer his parole supervision to New Jersey, it is uncertain whether the request will be granted" (EXHIBIT 1, p. 2).

Firstly, the Governor rushed to judgment, reversing Petitioner's grant of parole on this ground two weeks before New Jersey's deadline to respond. New Jersey did, indeed, accept Petitioner's transfer of parole. This was the second time California's out of state parole transfer division dropped the ball on Petitioner's paperwork to transfer his parole to New Jersey.

Secondly, Petitioner was simply stationed at Twenty Nine Palms Marine Base in San Bernardino County, and knows no one in that county. Petitioner did, however, have in his file, if the Governor's staff even read it, an offer of residence and a job in Santa Cruz County (HT 74), and the Governor has the authority to "modify" a decision, like county of parole, "if that would be in the best interest of the public and the parolee" (Penal Code § 3003(b)). Petitioner met the criteria for a transfer of parole to another county.

Thirdly, all the law requires is that Petitioner "has developed marketable skills that can be put to use upon release" (Cal. Code Regs., tit. 15, § 2402(d)(8)).

All that is required is that Petitioner "have realistic plans for release" In re Andrade, 141 Cal.App.4th 807, 816 (2006); Willis v. Kane, 458 F.Supp.2d, at 1136, supra).

Moreover, in that Petitioner has exceeded his uniform term for

the severity of his offense, and excess prison credits are to be deducted from parole, and Petitioner's plea agreement was for a fixed parole of 3 or 4 years (EXHIBIT 5, p. 9), he is entitled to discharge (<u>Martin v. Marshall</u>, 448 F.Supp.2d 1143 (N.D. Cal. 2006), and "parole plans" are therefore irrelevant to case at bench.

### C O N C L U S I O N

Based on the foregoing facts, exhibits and case law, it is respectfully requested that an Order to Show Cause issue for the respondent to show cause why the writ should not be granted and Petitioner discharged from custody within 5 days of the Court's Order.

DATED: *25 September, 07.*

Respectfully submitted,

*Donald W. Boone*
Donald W. Boone
Petitioner in pro se

- 17 -