EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
JULIE L. GARLAND
Senior Assistant Attorney General
ANYA M. BINSACCA
Supervising Deputy Attorney General
STEVEN G. WARNER, State Bar No. 239269
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 703-5747
 Fax: (415) 703-5843
 Email: Steven.Warner@doj.ca.gov

Attorneys for Respondent Warden Ben Curry
SF2007403137

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DONALD W. BOONE,<br><br>　　　　　　　Petitioner,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER,<br><br>　　　　　　　Respondent. | C 07-4724 PJH<br><br>**ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: The Honorable Phyllis J. Hamilton |

　　　In this habeas corpus action, state inmate Donald W. Boone contends that the Governor unconstitutionally reversed the Board of Parole Hearings' 2006 parole grant.

　　　This Court issued an order to show case on November 7, 2007. Respondent Warden Ben Curry answers as follows:

### ANSWER

　　　Respondent hereby admits, denies, and alleges the following in response to the petition for writ of habeas corpus filed in this Court on September 13, 2007:

///

1.    Respondent affirmatively alleges that Boone is lawfully in the custody of the California Department of Corrections and Rehabilitation following his August 22, 1986 conviction for first-degree murder with firearm use. (Ex. 1, J. – Commitment.) He is currently serving an indeterminate sentence of seventeen years to life (fifteen years to life for the murder with a two-year firearm enhancement). (Ex. 2, Report – Indeterminate Sentence.) Boone does not challenge this conviction in the instant action.

2.    Boone was convicted of second-degree murder for fatally shooting his wife with a shotgun while she was lying on a couch. (Ex. 3, Sheriff's Department, County of San Bernardino, Uniform Crime Report at 50-54.) Boone attempted to commit suicide after shooting his wife by turning the shotgun on himself. (*Id.*)

3.    Boone and his wife were experiencing marital problems before the murder and Boone was the subject of a restraining order limiting his contact with his wife. (*Id.* at 55.) In the days before he murdered his wife, Boone sent her flowers with a card reading "We live[] together or die together." (*Id.* at 92.) Boone said that he decided to shoot his wife one to one and a half hours before the murder. (Ex. 4, Subsequent Parole Consideration Hearing [Transcript], April 27, 2005 at 55.)

4.    Respondent admits that the Board of Parole Hearings found Boone suitable for parole on August 10, 2006. (Ex. 5, Subsequent Parole Consideration Hearing [Transcript], August 10, 2006 at 97.) Respondent further admits that on December 21, 2006, the Governor reversed the Board's parole suitability finding pursuant to California Penal Code section 3041.2. The Governor relied on the gravity of the second-degree murder Boone committed, especially considering the premeditation involved, found that the gravity of the murder alone was sufficient to conclude that Boone's release from prison would have posed an unreasonable public-safety risk, and that even if Boone was under stress when he murdered his wife, it was insufficient to mitigate the crime's gravity. (Ex. 6, Indeterminate Sentence Parole Release Review at 2.) Additionally, the Governor relied on Boone's unsettled parole plans. (*Id.*)

5.    Respondent admits that Boone filed a petition in San Bernardino County Superior Court generally alleging the same claims that he alleges here. (Ex. 7, Pet. for Writ of Habeas

Corpus.[1]) Respondent further admits that the San Bernardino County Superior Court denied Boone's petition for writ of habeas corpus on May 3, 2007. (Ex. 8, Order Denying Pet. for Writ of Habeas Corpus.)

6. Respondent admits that Boone filed a petition in the California Court of Appeal generally alleging the same claims that he alleges here. (Ex. 9, Pet. for Writ of Habeas Corpus.) Respondent further admits that the California Court of Appeal summarily denied Boone's petition for writ of habeas corpus on June 12, 2007. (Ex. 10, Order.)

7. Respondent admits that Boone filed a petition for review in the California Supreme Court generally alleging the same claims that he alleges here. (Ex. 11, Pet. for Writ of Habeas Corpus.) Respondent further admits that the California Supreme Court summarily denied Boone's petition on August 8, 2007. (Ex. 12, California Supreme Court Denial.) Respondent also admits that Boone thus exhausted his state court remedies in regard to the claims alleged here stemming from the Governor's 2006 reversal. However, Respondent denies that Boone exhausted his claims to the extent that they are more broadly interpreted to encompass any systematic issues beyond the 2006 reversal.

8. Respondent denies that Boone presents a federal claim for review when he contends that his plea agreement was for a fixed parole term of three or four years.

9. Respondent preserves the argument that Boone does not have a federally protected liberty interest in parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979) (liberty interest in conditional parole release date created by unique structure and language of state parole statute); *In re Dannenberg*, 34 Cal. 4th 1061, 1087 (2005) (California's parole scheme is a two-step process that does not impose a mandatory duty to grant life inmates parole before a suitability finding); and *Sandin v. Connor*, 515 U.S. 472, 484 (1995) (no federal liberty interest in parole because serving a contemplated sentence does not create an atypical or significant hardship compared with ordinary prison life). *Contra Sass v. Cal. Bd. of Prison*

---

1. To avoid a voluminous and repetitive filing, Respondent does not include the exhibits to any of the state court habeas petitions as exhibits to this Answer. Respondent will gladly provide this Court with its copies of those exhibits upon request.

Answer to Order to Show Cause; Mem. of P. & A.   *Boone v. Schwarzenegger*
Case No. C 07-4724 PJH

1  *Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006) (holding that California inmates have a federally
2  protected liberty interest in a parole date).

3      10. Respondent denies that the state courts' denials of habeas corpus relief were contrary
4  to, or involved an unreasonable application of, clearly established United States Supreme Court
5  law, or that the denials were based on an unreasonable interpretation of facts in light of the
6  evidence presented. Boone therefore fails to make a case for relief under AEDPA.

7      11. Respondent affirmatively alleges that Boone had an opportunity to present his case to
8  the Board, and that the Governor provided him with a detailed explanation for his reversal.
9  Thus, Boone received all process due under *Greenholtz*, the only clearly established federal law
10 regarding inmates' due process rights in a parole setting.

11     12. Respondent affirmatively alleges that the Governor considered all relevant and reliable
12 evidence before him, and that some evidence supports his decision. Respondent denies that the
13 Governor's findings violate Boone's due process rights for this reason. However, Respondent
14 further affirmatively alleges that the some-evidence standard does not apply in federal habeas
15 proceedings challenging parole reversals, and that the some-evidence standard is only clearly
16 established federal law in the prison disciplinary context.

17     13. Respondent affirmatively alleges that the Governor properly considered the gravity of
18 Boone's commitment offense as required of the Board under California Penal Code section
19 3041(b) (the Governor's review was properly guided by the same considerations that informed
20 the Board's review). Respondent denies that the commitment offense has lost its predictive
21 value and is no longer evidence of Boone's current risk of danger to society.

22     14. Respondent affirmatively alleges that the United States Supreme Court holdings in
23 *Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2000), and *Blakely v. Washington*, 542 U.S. 296,
24 303-04 (2004) do not apply here because Boone is not serving a sentence beyond the prescribed
25 statutory maximum for second-degree murder. *See* Cal. Penal Code § 190(a) (West 1995).

26     15. Respondent denies that Boone's parole plans are irrelevant because he is entitled to
27 discharge without parole. Respondent further denies that Boone is entitled to discharge free of
28 parole.

Answer to Order to Show Cause; Mem. of P. & A.                    *Boone v. Schwarzenegger*
                                                                                    Case No. C 07-4724 PJH

16. Respondent admits that Boone's claims are timely under 28 U.S.C. § 2244(d)(1) (2000), and are not barred by any other procedural defense.

17. Respondent denies that an evidentiary hearing is necessary in this matter.

18. Respondent denies that it is proper for any court to order Boone discharged from custody. Respondent further denies that Boone is entitled to discharge from custody.

19. Respondent affirmatively alleges that Boone establishes no grounds for habeas relief.

20. Except as expressly admitted above, Respondent denies every allegation in the petition, and specifically denies any violation of Boone's administrative, constitutional, or statutory rights.

Thus, Respondent requests that this Court deny the petition and dismiss these proceedings.

## MEMORANDUM OF POINTS AND AUTHORITIES

### ARGUMENT

**THE STATE COURTS' DENIALS OF BOONE'S HABEAS PETITIONS WERE NEITHER CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

Under AEDPA, a federal court may grant a writ of habeas corpus on a claim that a state court already adjudicated on the merits only if the state court's adjudication was either: 1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or 2) "based on an unreasonable determination of the facts in light of the evidence presented at the State Court proceeding." 28 U.S.C. § 2254(d)(1-2) (2000). The state court decisions denying Boone's claim for habeas relief were neither contrary to or an unreasonable application of federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Boone fails to establish a violation of AEDPA standards, and the state courts decisions must stand.

**A. The State Court Decisions Were Not Contrary to Clearly Established Federal Law.**

In *Greenholtz*, the United States Supreme Court established the due process protections required in a state parole system. The Court held that the only process due at a parole consideration hearing is an opportunity for the inmate to present his case, and an explanation for

1  a parole denial. *Greenholtz*, 442 U.S. at 16. Boone's claim fails because he received both of
2  these protections.
3      At his hearing, Boone had an opportunity to present his case to the Board and he later
4  received an explanation as to why the Governor reversed the Board's parole grant. (*See*
5  *generally* Ex. 5; Ex. 6 at 2-3.) Boone does not contend otherwise in his petition. Therefore, the
6  state courts properly upheld the Governor's reversal – and the petition should be denied –
7  because Boone received all process due under *Greenholtz*.
8      Moreover, the some-evidence standard does not apply in federal habeas proceedings
9  challenging parole reversals. The United States Supreme Court recently reiterated that for
10 AEDPA purposes, "clearly established federal law" refers only to the holdings of the nation's
11 highest court on the specific issue presented. *Carey v. Musladin*, __ U.S. __, 127 S. Ct. 649, 653
12 (2006). In *Musladin*, a convicted murderer filed a federal habeas petition after a state appeals
13 court upheld the victim's family members' wearing of buttons with the victim's photograph on
14 them during the trial as not inherently or actually prejudicial under two United State Supreme
15 Court cases. *Id.* at 651-52. The Court of Appeals for the Ninth Circuit reversed, noting that the
16 state court's decision was contrary to, or involved an unreasonable application of, clearly
17 established federal law – the prejudice test in the two United State Supreme Court cases. *Id.* at
18 652. In vacating the Ninth Circuit's decision, the Supreme Court stated that the cases that the
19 Ninth Circuit relied on involved state-sponsored courtroom practices – making a defendant wear
20 prison clothing during trial in one and seating four uniformed troopers behind a defendant on trial
21 in the other – that were unlike the private action of the victim's family members' wearing of
22 buttons. *Id.* at 653-54. The *Musladin* Court further noted that the two cases were not clearly
23 established federal law on the issue at hand because the United States Supreme Court "has never
24 addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it
25 deprived a defendant of a fair trial." *Id.* at 653. Consequently, the Court held that the Ninth
26 Circuit erred by importing a federal test for prejudicial state action in a courtroom to private
27 spectators' courtroom conduct. *Id.* at 654.
28 ///

Recently, in *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933, 1942 (2007), the United States Supreme Court again factually distinguished two of its cases that the Ninth Circuit cited in holding that the state court unreasonably applied clearly established federal law when finding ineffective assistance of counsel claims frivolous. In *Landrigan*, a criminal defendant questioned by the judge told the court that he did not want mitigating evidence presented (his attorney advised otherwise). *Id.* at 1937-38. The United States Supreme Court reasoned that the two cases that the Ninth Circuit relied on were not clearly established federal law by distinguishing them factually. *See id.* at 1942. The Court noted that one case involved an attorney's failure to provide mitigating evidence, while the other case concerned a defendant who refused to help develop mitigating evidence. *Id.*

Likewise, the Ninth Circuit has recently affirmed this principle in a number of cases. For instance, in *Foote v. Del Papa*, 492 F.3d 1026, 1029 (9th Cir. 2007), the Ninth Circuit affirmed the district court's denial of a petition alleging ineffective assistance of appellate counsel based on an alleged conflict of interest because no Supreme Court case has held that such an irreconcilable conflict violates the Sixth Amendment. Similarly, in *Nguyen v. Garcia*, 477 F.3d 716 (9th Cir. 2007), the Ninth Circuit upheld the state appellate court's decision – refusing to apply *Wainwright v. Greenfield*, 474 U.S. 284 (1986) to a competency hearing – as not contrary to clearly established federal law because the Supreme Court has not held that *Wainwright* applies to competency hearings. *Id.* at 718, 727. Moreover, in *Locke v. Cattell*, 476 F.3d 46 (9th Cir. 2007), the Ninth Circuit affirmed the denial of a petition based on a proposed violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) because the state court's decision denying relief was not unreasonable under AEDPA. *Cattell*, 476 F.3d at 53. The court reasoned that no Supreme Court case supported petitioner's contention that his admission to a crime transformed a police interview into a custodial interrogation. *Id.* Lastly, the Ninth Circuit recently reiterated that in regards to clearly established federal law, "[w]hat matters are the holdings of the Supreme Court, not the holdings of lower federal courts." *Plumlee v. Masto*, ___ F.3d ___, No. 04-15101, 2008 U.S. App. LEXIS 985, *14 (9th Cir. January 17, 2008).

///

Similarly, given that *Hill* applied the some-evidence standard to a prison disciplinary hearing and Boone contests a parole reversal, the some-evidence standard does not apply to this case. Because *Greenholtz* is the *only* United States Supreme Court authority describing the process due at a parole consideration hearing when an inmate has a federal liberty interest in parole, the *Greenholtz* test, not the some-evidence standard, should apply in this proceeding. Regardless, Respondent recognizes that the Ninth Circuit has held otherwise, most recently in *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007), and will argue this case accordingly.

### B. The State Court Decisions Upholding the Governor's Parole Reversal Were a Reasonable Application of Clearly Established Federal Law.

Assuming that Boone has a federally protected liberty interest in parole and that the "minimally stringent" some-evidence standard applies, the requirements of due process are satisfied if there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *See Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (applying some-evidence standard to prison disciplinary hearing). The some-evidence standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence;" rather, it assures that "the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." *Hill*, 472 U.S. at 455, 457. Thus, both the "reasonable application" standard of AEDPA and the some-evidence standard of *Hill* are very minimal standards.

When, as here, the California Supreme Court denies a petition for review without comment, the federal court will look to the last reasoned decision as the basis for the state court's judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). In this case, the last reasoned decision is the San Bernardino County Superior Court decision denying Boone's habeas claim. (Ex. 8.) The court found that "there was more than 'some evidence' to support the Governor's reversal." (*Id.* at 2.) Furthermore, the court noted that the Governor "need not explain its or his decision for the precise manner in which specific facts were relevant to parole suitability," and that "[t]his consideration of balancing lies solely in the discretion of . . . the Governor." (*Id.* at 2.) Therefore, Boone's claims fail because these findings were a reasonable application of the

1  *Hill* some-evidence standard.

2  Moreover, Boone's contention – citing *Biggs* and other cases – that the commitment offense has lost its predictive value and may violate due process if relied on to deny parole after the initial hearing does not make the state courts' application of the some-evidence standard unreasonable. (Pet. at 13-14.) In *Biggs*, 334 F.3d at 917, the Ninth Circuit stated that the Board's continued reliance on an unchanging factor to deny parole "could result in a due process violation." However, the *Biggs* court did not definitively indicate that reliance on an unchanging factor necessarily violates due process, only that it possibly could. The court praised Biggs for being "a model inmate," and found that the record was "replete with the gains Biggs has made," including a master's degree in business administration. *Id.* at 912. Nonetheless, the court denied habeas relief because the Board's decision to deny parole – which relied solely on the commitment offense – was supported by some evidence.

Most importantly, the statement in *Biggs* is merely circuit court dicta, and not clearly established federal law sufficient to overturn a state court decision under AEDPA. *Crater v. Galaza*, 491 F.3d 1119, 1126 (9th Cir. 2007) (holding that AEDPA "renders decisions by lower courts non-dispositive for habeas appeals"). The Ninth Circuit recently emphasized that *Biggs* does not contain mandatory language, and that "[u]nder AEDPA, it is not our function to speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129. The *Sass* court then rejected the argument that the Board's reliance on "immutable behavioral evidence" to deny parole violated federal due process.[2] *Id.* Although the Ninth Circuit recently revisited this issue again in *Irons* in dicta, it held there that despite "substantial" evidence of rehabilitation, the Board acted properly within its discretion in continuing to rely on the circumstances of the inmate's offense to deny parole. *Irons v. Carey*, 505 F.3d 846, 853-54 (9th Cir. 2007). Thus,

---

2. This Court has also recognized that the Board may properly rely on static factors to deny parole. In a recent decision, this Court noted that "[p]ast criminal conduct is not some arbitrary factor like eye color that has nothing to do with present dangerousness. Recidivism concerns are genuine. California's parole scheme does not offend due process by allowing the [Board] to predict that an inmate presents a present danger based on a crime he committed many years ago." *Hill v. Kane*, 2006 WL 3020923 at *3 (Oct. 26, 2006) (N.D. Cal.) (citations omitted).

Answer to Order to Show Cause; Mem. of P. & A.                      *Boone v. Schwarzenegger*
                                                                    Case No. C 07-4724 PJH

1  *Biggs* does not preclude the Governor from using the circumstances of the commitment offense
2  to deny parole, nor may its dicta be used to overturn a valid state court decision.

### C. The State Court Decisions Upholding the Governor's Parole Reversal Were Based on a Reasonable Interpretation of the Facts in Light of the Evidence Presented.

The second standard under AEDPA is that state court habeas decisions must be based on a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2) (2000). Boone bears the burden of proving that the state courts' factual determinations were objectively unreasonable. 28 U.S.C. § 2254(e)(1); *Juan H. v. Allen*, 408 F.3d 1262, 1270 (9th Cir. 2005). In his petition Boone fails to prove that the state courts' upholding of the Governor's reversal was based on objectively unreasonable factual determinations.

Here, the state court properly found that some evidence supported the Governor's reversal. (Ex. 8 at 2.) The Governor relied on facts from a police report and Boone's testimony at his 2005 subsequent parole consideration hearing in finding that the gravity of the commitment offense was alone sufficient to reverse the Board's parole grant. (Ex. 6 at 2; *see generally* Exs. 3-4.) In addition, the Governor relied on Boone's testimony in finding that Boone's parole plans were unsettled because in California he made plans only in a county other than the commitment county (and the Board had not approved this transfer), and the outcome of his second plan – transferring parole supervision to New Jersey – was uncertain. (Ex. 6 at 2; Ex. 5 at 64-75.)

The state courts' upholding of the Governor's reversal is both supported by the record and a reasonable interpretation of the evidence presented. As such, the state courts' denials of habeas relief meet AEDPA standards, and there are no grounds for this Court to overturn the decisions. The petition for writ of habeas corpus should be denied.

///
///
///
///
///
///

## CONCLUSION

To invalidate the Governor's parole reversal under AEDPA, Boone must show that the state court decisions denying habeas relief were contrary to, or an unreasonable interpretation of, clearly established Supreme Court law, or that the decisions involved unreasonable factual determinations. Boone fails to make these showings. First, Boone received all process due under *Greenholtz*, the only clearly established federal law specifying due process in a parole setting. Second, the state court decisions denying Boone parole did not apply the some-evidence standard in a manner involving an unreasonable application of United States Supreme Court law, nor did they involve unreasonable factual determinations, because some evidence supports the Governor's reversal. As a result, Respondent respectfully requests that this Court deny Boone's petition for writ of habeas corpus.

Dated: February 4, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

JULIE L. GARLAND
Senior Assistant Attorney General

ANYA M. BINSACCA
Supervising Deputy Attorney General

STEVEN G. WARNER
Deputy Attorney General
Attorneys for Respondent

40210767.wpd

Answer to Order to Show Cause; Mem. of P. & A.

*Boone v. Schwarzenegger*
Case No. C 07-4724 PJH

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   *Donald Boone v. Arnold Schwarzenegger*

No.:   U. S. D. C., N. D., SAN FRANCISCO DIV., C 07-4724 PJH

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **February 6, 2008**, I served the attached

### ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES WITH EXHIBITS 1 - 12

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Donald Boone, D-37952**
**Correctional Training Facility**
**P.O. Box 689**
**Soledad, CA 93960-0689**
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **February 6, 2008**, at San Francisco, California.

|  |  |
|---|---|
| J. Baker | *[signature]* Baker |
| Declarant | Signature |

40215444.wpd