# EXHIBIT 5
# Part 1 of 3

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS


In the matter of the Life )
Term Parole Consideration )
Hearing of:               )        CDC Number D-37952
                          )
DONALD BOONE              )
                          )
_____)


CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

AUGUST 10, 2006



PANEL PRESENT:

ARCHIE JOE BIGGERS, Presiding Commissioner
RUFUS MORRIS, Deputy Commissioner

OTHERS PRESENT:

DONALD BOONE, Inmate
JENNIFER DAWSON, Deputy District Attorney
CORRECTIONAL OFFICER(S), Unidentified



CORRECTIONS TO THE DECISION HAVE BEEN MADE

            _____   No      See Review of Hearing
            _____   Yes     Transcript Memorandum



**Ramona Cota            Peters Shorthand Reporting**

ii

# INDEX

|  | PAGE |
|---|---|
| Proceedings | 1 |
| Case Factors | 16 |
| Pre-Commitment Factors | 40 |
| Post-Commitment Factors | 44 |
| Parole Plans | 64 |
| Closing Statements | 89 |
| Recess | 96 |
| Decision | 97 |
| Adjournment | 109 |
| Transcriber Certification | 110 |

--oOo--

1.

1    **P R O C E E D I N G S**

2        **DEPUTY COMMISSIONER MORRIS:** Okay, we are

3    on record.

4        **PRESIDING COMMISSIONER BIGGERS:** Okay,

5    before we get started on this hearing,

6    Mr. Boone, why are you representing yourself?

7        **INMATE BOONE:** I feel that I can do an

8    adequate job on representing myself. And I know

9    the case better than an attorney would so I

10    think that I can do an adequate job on

11    representing myself.

12        **PRESIDING COMMISSIONER BIGGERS:** You've

13    got to do more than adequate.

14        **INMATE BOONE:** I have done it two times

15    before and I think I did pretty well.

16        **PRESIDING COMMISSIONER BIGGERS:** Okay,

17    well, you know, that is definitely your right.

18    I just wanted to make sure that you understand

19    that the State would, it's required they provide

20    you an attorney --

21        **INMATE BOONE:** Yes sir.

22        **PRESIDING COMMISSIONER BIGGERS:** -- if

23    you have less than $1500 in your, in your

24    account.

25        **INMATE BOONE:** Yes sir.

26        **PRESIDING COMMISSIONER BIGGERS:** And that

27    you know that that is, in fact, available to you

2

1    if you so desire to use it.

2            **INMATE BOONE:**  Yes sir.

3            **PRESIDING COMMISSIONER BIGGERS:**  Okay.

4    So you still want to represent yourself, is that

5    correct?

6            **INMATE BOONE:**  Yes sir, yes.

7            **PRESIDING COMMISSIONER BIGGERS:**  Okay,

8    all right.  Then this is a Subsequent Parole

9    Consideration Hearing for a Donald Boone, B-O-O-

10   N-E, The CDC number is D-37952.  Today's date is

11   August 10, 2006 and we are located at the

12   Correctional Training Facility in Soledad.  The

13   inmate was received on September 4, 1986 from

14   San Bernardino County.  The life term began on

15   July 9, 1987 and the minimum eligible parole

16   date was 12/04/96.  The controlling offense for

17   which the inmate has been committed is murder

18   second degree with the use of a firearm.  The

19   case number is BCR, that's bravo Charlie Romeo,

20   667.  One count is a violation of the Penal Code

21   187 that was enhanced with a violation of a

22   12022.5, which is use of a weapon, i.e. a

23   shotgun.  The inmate received a term of 15 years

24   to life plus two years with a minimum eligible

25   parole date of 12/04/96.  Mr. Boone, this

26   hearing is being tape-recorded.

27           **INMATE BOONE:**  Yes sir.

3

1          **PRESIDING COMMISSIONER BIGGERS:**  For the

2    purpose of voice identification each of us will

3    state our first and last name, spelling our last

4    name.  When it is your turn after spelling your

5    last name please give us your CDC number.

6          **INMATE BOONE:**  Yes sir.

7          **PRESIDING COMMISSIONER BIGGERS:**  I will

8    start and move to my left.  My name is Archie

9    Joe Biggers, B-I-G-G-E-R-S, and I am a

10   Commissioner with the Board of Parole Hearings.

11         **DEPUTY COMMISSIONER MORRIS:**  Rufus

12   Morris, M-O, double R, I-S, Deputy Commissioner.

13         **DEPUTY DISTRICT ATTORNEY DAWSON:**

14   Jennifer Dawson, D-A-W-S-O-N, Deputy District

15   Attorney San Bernardino County.

16         **INMATE BOONE:**  Donald Boone, B-O-O-N-E,

17   D-37952.

18         **PRESIDING COMMISSIONER BIGGERS:**  Okay,

19   and again for the record, Mr. Boone will be

20   representing himself.  Mr. Boone, in front of

21   you there, there is an ADA statement.  Would you

22   please read that out loud for us.

23         **INMATE BOONE:**  "ADA/Americans with

24             Disabilities Act.  The Americans

25             with Disabilities Act, ADA, is a

26             law to help people with

27             disabilities.  Disabilities are

4

| | |
|---|---|
| 1 | problems that make it harder for |
| 2 | some people to see, hear, breathe, |
| 3 | talk, walk, learn, think, work or |
| 4 | take care of themselves than it is |
| 5 | for others.  Nobody can be kept |
| 6 | out of public places or activities |
| 7 | because of a disability.  If you |
| 8 | have a disability you have the |
| 9 | right to ask for help to get ready |
| 10 | for your BPT Hearing, get to the |
| 11 | hearing, talk, read forms and |
| 12 | papers and understand the hearing |
| 13 | process.  BPT will look at what |
| 14 | you ask for to make sure that you |
| 15 | have a disability that is covered |
| 16 | by the ADA and that you have asked |
| 17 | for the right kind of help.  If |
| 18 | you do not get help or if you |
| 19 | don't think you got the kind of |
| 20 | help you need, ask for a BPT 1074 |
| 21 | Grievance Form.  You can also get |
| 22 | help to fill it out." |
| 23 | **PRESIDING COMMISSIONER BIGGERS:**  Okay, I |
| 24 | see here that you signed a BPT 1073 on January |
| 25 | 9, 2006 indicating that you have no |
| 26 | disabilities. |
| 27 | **INMATE BOONE:**  Yes sir. |

5

1        PRESIDING COMMISSIONER BIGGERS:  Okay.
2   But you're wearing glasses.
3        INMATE BOONE:  Oh, yes sir.
4        PRESIDING COMMISSIONER BIGGERS:  You need
5   those to read, is that correct?
6        INMATE BOONE:  Yes sir, yes sir.
7        PRESIDING COMMISSIONER BIGGERS:  There is
8   a block in there where you say you need those
9   glasses to see.  So in the event you don't get a
10  date today you should put in there, I need
11  eyeglasses in order to read, okay?
12       INMATE BOONE:  All right.
13       PRESIDING COMMISSIONER BIGGERS:  What are
14  you laughing about?
15       INMATE BOONE:  It just seems funny that
16  -- about the glasses, that's all.
17       PRESIDING COMMISSIONER BIGGERS:  Well,
18  there are a lot of inmates who come here who
19  don't wear glasses.
20       INMATE BOONE:  Yes sir.
21       PRESIDING COMMISSIONER BIGGERS:  And in
22  order for us -- we don't know until we ask.
23       INMATE BOONE:  Yes sir.
24       PRESIDING COMMISSIONER BIGGERS:  Did you
25  have those on when you went out, when you did
26  your C File?
27       INMATE BOONE:  Yes sir.

6

1          **PRESIDING COMMISSIONER BIGGERS:**   Okay.

2   So if you break them and you come in here and

3   you see it down here I'm going to ask you, hey,

4   where's your glasses.

5          **INMATE BOONE:**   Okay, okay, yes sir.

6          **PRESIDING COMMISSIONER BIGGERS:**   Make

7   sense?

8          **INMATE BOONE:**   Yes sir.

9          **PRESIDING COMMISSIONER BIGGERS:**   Okay.

10   Do you have any hearing impairments?

11          **INMATE BOONE:**   No sir.

12          **PRESIDING COMMISSIONER BIGGERS:**   Are you

13   involved in the CCCMS or EOP?

14          **INMATE BOONE:**   No sir.

15          **PRESIDING COMMISSIONER BIGGERS:**   You know

16   what those terms are, right?

17          **INMATE BOONE:**   Yes sir.

18          **PRESIDING COMMISSIONER BIGGERS:**   What are

19   they?

20          **INMATE BOONE:**   It's a medical term for

21   people that are on medication.

22          **PRESIDING COMMISSIONER BIGGERS:**   Well,

23   it's psychotropic medication but it has to do

24   with mental health issues.

25          **INMATE BOONE:**   Yes sir.

26          **PRESIDING COMMISSIONER BIGGERS:**   Okay.

27   How far did you get in school on the streets?

7

1  You've got a pretty big GPL, 12.9.

2      **INMATE BOONE:**  Yes sir.

3      **PRESIDING COMMISSIONER BIGGERS:**  Did you

4  graduate from high school?

5      **INMATE BOONE:**  Yes sir.

6      **PRESIDING COMMISSIONER BIGGERS:**  You were

7  a marine as well, right?

8      **INMATE BOONE:**  Yes sir.

9      **PRESIDING COMMISSIONER BIGGERS:**  Okay.

10  Do you suffer from any disability that would

11  prevent you from participating in today's

12  hearing?

13      **INMATE BOONE:**  No sir.

14      **PRESIDING COMMISSIONER BIGGERS:**  Do you

15  feel, since you are acting as your own counsel,

16  that your ADA rights have been served?

17      **INMATE BOONE:**  Yes.

18      **PRESIDING COMMISSIONER BIGGERS:**  Okay.

19  This hearing is being conducted pursuant to

20  Penal Code Sections 3041 and 3042 and the rules

21  and regulations of the Board of Prison Terms

22  governing parole consideration hearings for life

23  inmates.  The purpose of today's hearing is to

24  once consider the number and nature of the crime

25  you were committed for, your prior criminal and

26  social history and your behavior and programming

27  since your commitment.  We have had the

8

1  opportunity to review your Central File and your

2  prior transcript and you will be given the

3  opportunity to correct or clarify the record.

4  We will reach a decision today and inform you

5  whether or not we find you suitable for parole

6  and the reasons for our decision.  If you are

7  found suitable for parole the length of your

8  confinement will be explained to you.  Nothing

9  that happens here today will change the finding

10  of the court.  This panel is not here to retry

11  your case.

12      **INMATE BOONE:**  Yes sir.

13      **PRESIDING COMMISSIONER BIGGERS:**  We are

14  here for the sole purpose of determining your

15  suitability for parole.  Do you understand that?

16      **INMATE BOONE:**  Yes sir.

17      **PRESIDING COMMISSIONER BIGGERS:**  The

18  hearing will be conducted in three phases.  I

19  will discuss with you the crime you were

20  committed for, your prior criminal and social

21  history.  Deputy Commissioner Morris will

22  discuss with you your progress since your

23  commitment, your counselor's report and your

24  psychological evaluation.

25      **INMATE BOONE:**  Yes sir.

26      **PRESIDING COMMISSIONER BIGGERS:**  Then I

27  will come back and talk to you about your parole

9

1  plans and any letters of support or opposition

2  that may be in your file.  Once that is

3  concluded both Commissioners, the district

4  attorney and you -- and you won't have to worry

5  about this, you won't be asking yourself any

6  questions, but you can clarify anything that you

7  want after that.

8       **INMATE BOONE:**  Yes sir.

9       **PRESIDING COMMISSIONER BIGGERS:**  But

10 primarily it will be the Commissioners and the

11 District Attorney, will then ask, have the

12 opportunity to ask you questions.  The questions

13 from the district attorney shall be asked

14 through the Chair and you will direct your

15 answers to the panel.  Next the district

16 attorney and then you acting on your own behalf

17 will be having the opportunity to make a closing

18 statement.  Which I would like for you in your

19 closing statement to tell us why you feel you

20 are suitable for parole.

21      **INMATE BOONE:**  Yes sir.

22      **PRESIDING COMMISSIONER BIGGERS:**  Then we

23 will recess, clear the room and deliberate.

24 Once the deliberations are complete the panel

25 will resume the hearing and announce its

26 decision.  Now the California Code of

27 Regulations states that regardless of time

1    served a life inmate shall be found unsuitable

2    for and denied parole if in the judgment of the

3    panel the inmate would pose an unreasonable risk

4    of danger to society if released from prison.

5    You have certain rights.  Those rights include

6    the right of a timely notice of this hearing,

7    the right to review your Central File, which you

8    indicated that you had.

9              INMATE BOONE:  Yes sir.

10             PRESIDING COMMISSIONER BIGGERS:  And the

11   right to present relevant documents.  Now I am

12   going to ask you, since you're acting as your

13   own attorney, do you feel that your rights have

14   been met?

15             INMATE BOONE:  Yes sir.

16             PRESIDING COMMISSIONER BIGGERS:  You do?

17             INMATE BOONE:  Yes sir.

18             PRESIDING COMMISSIONER BIGGERS:  Okay.

19   You have an additional right to be heard by an

20   impartial panel.  Do you have any objection to

21   the panel members?

22             INMATE BOONE:  No sir.

23             PRESIDING COMMISSIONER BIGGERS:  Okay.

24             INMATE BOONE:  I have one issue though,

25   sir.  Going through Title 15 and it was Section

26   2030.  And I was, I just happened to see it when

27   I was going through it.  And it states that if I

11

1   am not represented by an attorney then the

2   District Attorney can't participate in the

3   hearing.

4       PRESIDING COMMISSIONER BIGGERS:   Not

5   necessarily so.  Let me get my Title 15 out.  I

6   don't think that's necessarily the case.

7       DEPUTY DISTRICT ATTORNEY DAWSON:   You

8   can't use (inaudible).

9       PRESIDING COMMISSIONER BIGGERS:

10  (Inaudible).  They're considering it may or

11  shall but we'll just check to make sure.

12      INMATE BOONE:   Okay.

13      PRESIDING COMMISSIONER BIGGERS:   2030.

14      INMATE BOONE:   Yes sir.

15      PRESIDING COMMISSIONER BIGGERS:   Hearings

16  in which prosecutors may participate except as

17  otherwise provided may permit a representative

18  -- No, I don't see that in 2030.

19      INMATE BOONE:   It says -- I have mine

20  here, sir.

21      PRESIDING COMMISSIONER BIGGERS:   I've got

22  mine here too.

23      INMATE BOONE:   It says, if I can read it?

24      PRESIDING COMMISSIONER BIGGERS:   Go

25  ahead.

26      INMATE BOONE:   "Hearings in which

27  prosecutors may participate, general.  Except as

12

1  otherwise provided in this section."

2      PRESIDING COMMISSIONER BIGGERS:  I've got

3  that part, go ahead.

4      INMATE BOONE:  "The General

5          Executive Officer may permit a

6          representative of the office which

7          had prosecuted a prisoner or

8          parolee to participate in any

9          Board Hearing when the prisoner or

10         parolee is represented by an

11         attorney."

12     PRESIDING COMMISSIONER BIGGERS:  Yeah,

13 but it doesn't say that they couldn't.

14     DEPUTY COMMISSIONER MORRIS:  It is

15 permissive.

16     PRESIDING COMMISSIONER BIGGERS:  It is

17 permissive.

18     INMATE BOONE:  I don't have an attorney.

19 It says, when I have an attorney.

20     PRESIDING COMMISSIONER BIGGERS:  You

21 don't have to.  It says here we may permit a

22 representative of the office.

23     INMATE BOONE:  When I had an attorney

24 though, that was my point.

25     PRESIDING COMMISSIONER BIGGERS:  Well, I

26 don't see that as an issue.  Let's go off record

27 here for a second, please.

13

1                    (Off the record.)

2           **DEPUTY COMMISSIONER MORRIS:**  Okay, we're

3    back on record.

4           **PRESIDING COMMISSIONER BIGGERS:**  Okay,

5    Mr. Boone.

6           **INMATE BOONE:**  Yes sir.

7           **PRESIDING COMMISSIONER BIGGERS:**  If you

8    were to look down at paragraph 2030(a)(3).  I'm

9    going to read this for the record.

10          **INMATE BOONE:**  Okay.

11          **PRESIDING COMMISSIONER BIGGERS:**

12              "Parole consideration and

13              rescission hearings for life

14              inmates.  A representative of the

15              district attorney of the county

16              from which a life prisoner was

17              committed may participate in any

18              parole consideration or rescission

19              hearing for that prisoner.  If the

20              Attorney General is prosecuting

21              the case for the county or if the

22              District Attorney cannot appear

23              before of a conflict the Attorney

24              General may appear and participate

25              in the hearing for the District

26              Attorney."

27    Okay, so we will continue and the district

14

1   attorney will be allowed to stay here.

2       **INMATE BOONE:**  Okay.

3       **PRESIDING COMMISSIONER BIGGERS:**  I think

4   where I left off is where I ask if there's any

5   -- all right.  So just to review to make sure I

6   have this in.  Do you have any -- Do you feel

7   that your rights have been met?

8       **INMATE BOONE:**  Not on this, not on this

9   particular issue sir.

10      **PRESIDING COMMISSIONER BIGGERS:**  Okay,

11  that's noted.

12      **INMATE BOONE:**  Yes sir, okay.

13      **PRESIDING COMMISSIONER BIGGERS:**  All

14  right.

15      **INMATE BOONE:**  Everything else is fine.

16      **PRESIDING COMMISSIONER BIGGERS:**

17  Everything else has been fine, okay.

18      **INMATE BOONE:**  Yes sir.

19      **PRESIDING COMMISSIONER BIGGERS:**  Well

20  again, I did get a legal opinion.

21      **INMATE BOONE:**  Okay.

22      **PRESIDING COMMISSIONER BIGGERS:**  And you

23  are welcome to, and your request is noted.

24      **INMATE BOONE:**  Okay, thank you sir.

25      **PRESIDING COMMISSIONER BIGGERS:**  All

26  right.  I am going to ask the Deputy

27  Commissioner if there is any confidential

15

1   material to be used?

2          **DEPUTY COMMISSIONER MORRIS:**  Let me see

3   here.  Ad seg documents.  No, no.

4          **PRESIDING COMMISSIONER BIGGERS:**  Okay, I

5   am going to mark the Hearing Checklist as

6   Exhibit One.  I am going to pass that to you,

7   Mr. Boone.

8          **INMATE BOONE:**  Okay.

9          **PRESIDING COMMISSIONER BIGGERS:**  And then

10  to the district attorney to make sure that we

11  are all working off of the same set of

12  documents.

13         **INMATE BOONE:**  Yes sir.

14         **PRESIDING COMMISSIONER BIGGERS:**  Okay,

15  thank you.  Pass it on, please.

16         **DEPUTY DISTRICT ATTORNEY DAWSON:**  I have

17  them all.

18         **PRESIDING COMMISSIONER BIGGERS:**  Okay,

19  let the record reflect that the district

20  attorney as well as Mr. Boone, who is

21  representing himself, all have the, we all have

22  the same set of documents.  Okay, do you have

23  any additional documents to submit?

24         **INMATE BOONE:**  No sir.

25         **PRESIDING COMMISSIONER BIGGERS:**  Are

26  there any preliminary objections that you have

27  sir?

16

1          **INMATE BOONE:**  No sir.

2          **PRESIDING COMMISSIONER BIGGERS:**  Other

3   than the one that you mentioned earlier?

4          **INMATE BOONE:**  No sir.

5          **PRESIDING COMMISSIONER BIGGERS:**  Will you

6   be speaking to us about the crime?

7          **INMATE BOONE:**  Yes sir.

8          **PRESIDING COMMISSIONER BIGGERS:**  Okay,

9   and would you please raise your right hand. Do

10  you solemnly swear or affirm that the testimony

11  you give at this hearing will be the truth and

12  nothing but the truth?

13         **INMATE BOONE:**  Yes sir I do.

14         **PRESIDING COMMISSIONER BIGGERS:**  Okay,

15  thank you.  I am going to read into the record a

16  summary of the crime.  And I am going to take

17  this from the 2004 Board Report.

18         "On April 18, 1986, 29 Palms

19         police arrived at 7065 Alpine, 29

20         Palms, the Boone residence,

21         regarding a disturbance.  Donald

22         Boone and a Jeffrey Crane, that's

23         C-R-A-N-E, got into a physical

24         altercation.  Boone had been

25         stationed overseas with the Marine

26         Corps for the previous 12 months

27         and had returned unannounced at

17

1        about 2115 hours to find his

2        wife --"

3   And that's Non?

4        **INMATE BOONE:**  Nyun (phonetic).

5        **PRESIDING COMMISSIONER BIGGERS:**  Nyun.

6        **INMATE BOONE:**  Yes.

7        **PRESIDING COMMISSIONER BIGGERS:**

8        "Nyun Mai Boone in the arms of

9        Crane.  On April 21, 1986 Nyun

10       Boone obtained a restraining order

11       against Donald Boone.  On April 24

12       in 1986 Boone was placed under a

13       citizen's arrest by Nyun Boone for

14       violation of the restraining

15       order.  On April 29, 1986 Boone

16       received a letter from the

17       District Attorney's Office

18       indicating that a complaint had

19       been filed for disobeying a court

20       order and he had an appearance

21       date of May 13, 1986.  On May 3,

22       1986 Boone shot his wife Nyun

23       twice in the chest with a 12-gauge

24       shotgun.  He then telephoned Brent

25       McWhirter, M-C-W-H-I-R-T-E-R, and

26       Thomas Pope, P-O-P-E, and told

27       them he had just shot his wife.

18

```
 1          Boone then left a suicide note and
 2          shot himself in the chest."
 3   And the prisoner's version.  I am going to read
 4   that into the record.
 5          "In an interview for this report
 6          Boone stated that his version has
 7          not changed from the version that
 8          was presented in earlier reports.
 9          In those reports he has stated
10          that he had come home from a
11          military overseas tour on April
12          18, 1986 and found his wife with
13          another man, Jeffrey Crane.  He
14          and the other man had a physical
15          altercation.  Police were called
16          but Crane ran out of the house
17          before they arrived.  Neither man
18          pressed charges.  Boone attempted
19          to keep his family together and
20          his marriage intact.  However, the
21          other man, Jeffrey Crane,
22          persisted in driving by the house,
23          calling on the phone, contacting
24          Ms. Boone at her work and making
25          threats to Boone.  Crane obtained
26          a restraining order and convinced
27          Ms. Boone to have it implemented.
```

19

1     Crane continued to make phone

2     calls and wrote a letter to Boone

3     telling him of the sex acts

4     between Crane and Ms. Boone and

5     about other men with whom

6     Ms. Boone had engaged in sex.

7     They continued over the course of

8     two weeks.  On May 3, 1986 Boone

9     took his wife to work and then

10    returned home.  Crane called from

11    New York and found Boone at home.

12    Boone told Crane that he and his

13    wife were going to get their lives

14    straightened out and to leave them

15    alone.  Crane immediately called

16    Ms. Boone at work.  She called

17    Boone at about 1500 hours and

18    became irate over what had passed

19    between Boone and Crane.  Later

20    when Crane (sic) brought his wife

21    home from work she told him that

22    she was not even attempting to

23    save their marriage.  Depressed

24    and angry he pulled out the

25    shotgun and shot his wife, called

26    the neighbors to tell them what he

27    had done and then shot himself."

1    Is that pretty much your version, sir?

2            INMATE BOONE:  Yes sir.

3            PRESIDING COMMISSIONER BIGGERS:  Okay.

4    Why didn't you just leave?

5            INMATE BOONE:  That's easy to say now and

6    that's exactly what I should have done.  And I

7    should have left the very night that I walked in

8    on, on this situation.  But I didn't.  I hadn't

9    seen my wife for a year, I hadn't seen my

10   daughter for a year.  And I felt that by talking

11   to her that we could get things straightened

12   out.  And that for a while seemed, up until the

13   last day, exactly what, it seemed like that's

14   what was going to happen.

15           PRESIDING COMMISSIONER BIGGERS:  But in

16   reading the case last evening I see that -- did

17   you not have any information that this had been

18   going on?

19           INMATE BOONE:  No sir.  When I walked in

20   that was the first thing I'd seen.  I had no

21   indication from anything.

22           PRESIDING COMMISSIONER BIGGERS:  I

23   thought when I was reading it, did you not get a

24   letter from anyone telling you that?

25           INMATE BOONE:  No sir.  Not a letter, not

26   nothing.

27           PRESIDING COMMISSIONER BIGGERS:  Okay.

21

1    Did you -- When you confronted your wife about

2    the situation what was her response?

3            **INMATE BOONE:**  She told me that she

4    didn't know, she told me that she didn't even

5    know his last name and that they had just met

6    and that it was puppy love.

7            **PRESIDING COMMISSIONER BIGGERS:**  And he

8    was a Marine as well?

9            **INMATE BOONE:**  Yes sir.

10           **PRESIDING COMMISSIONER BIGGERS:**  Did you

11   not know that you could go to the base and get

12   that squared away by talking to his commanding

13   officer?

14           **INMATE BOONE:**  I tried that sir, I tried.

15   In fact my command called me several days after

16   I arrived home and I had talked to Sergeant

17   Major Lott (phonetic).

18           **PRESIDING COMMISSIONER BIGGERS:**  Okay,

19   and what was your -- You were a Marine, is that?

20           **INMATE BOONE:**  Yes sir.

21           **PRESIDING COMMISSIONER BIGGERS:**  What was

22   your MOS?

23           **INMATE BOONE:**  3537 Motor Transport

24   Operations Chief.

25           **PRESIDING COMMISSIONER BIGGERS:**  Motor

26   Transport, okay.  And you talked to the Sergeant

27   Major.

22

1        INMATE BOONE:  Yes sir.

2        PRESIDING COMMISSIONER BIGGERS:  And what

3   did he say?

4        INMATE BOONE:  He said that they knew

5   that this was going on for approximately eight

6   months and that Crane's commanding officer, who

7   was a Major at that time and I don't recall what

8   his name was, he contacted my command and said

9   that a member of his command was involved with a

10   member of their command.  And also that Crane

11   had obtained, for whatever reason I have no

12   idea, a $25,000 life insurance policy on my

13   wife's life and they were stunned as to why.  I

14   have no idea why he would even do that.  I was

15   married to her for 11 years and I didn't have

16   any insurance policy.  So they were asking me

17   why would he do it and I said, I have no idea,

18   that was the first I had ever heard of it.

19        PRESIDING COMMISSIONER BIGGERS:  I don't

20   see that anywhere in the record.

21        INMATE BOONE:  No it's not because I was,

22   I was, that was when I was talking to Sergeant

23   Major Lott.  This is, I don't know, maybe a week

24   or ten days before this incident happened.

25        PRESIDING COMMISSIONER BIGGERS:  And they

26   did not take any action on Mr. Crane?

27        INMATE BOONE:  No sir, none whatsoever.

23

1   In fact, he got into a fight with his commanding

2   officer over this incident because --

3         PRESIDING COMMISSIONER BIGGERS:  A fight

4   with his commanding officer?

5         INMATE BOONE:  Yes sir, he was put in

6   Camp Pendleton brig.  He got into a fight with

7   the commanding officer, a physical altercation,

8   and Crane was put in the brig because of that

9   fight.

10         PRESIDING COMMISSIONER BIGGERS:  What

11   was, what was the rank of the officer that he

12   got in a fight with?

13         INMATE BOONE:  Major.

14         PRESIDING COMMISSIONER BIGGERS:  A Major?

15         INMATE BOONE:  Yes sir.

16         PRESIDING COMMISSIONER BIGGERS:  Do you

17   know what happened to him after he got put in

18   the brig?

19         INMATE BOONE:  As far as I know he got a

20   medical discharge.  He spent six months in the

21   brig, reduced rank and private.  Six months

22   reduction in pay -- without pay and then

23   reduction in rank to Private from Lance

24   Corporal.

25         PRESIDING COMMISSIONER BIGGERS:  Did you

26   make any statements to your wife before then

27   that you made me do this?

24

1    **INMATE BOONE:** Yes sir, on the day that,

2    on the day that I shot her, yes sir.

3    **PRESIDING COMMISSIONER BIGGERS:** What was

4    your mind like the day that you shot her? I

5    mean, you left a suicide note.

6    **INMATE BOONE:** Yes sir. I was, I was

7    desperate, I had lost all hope. And it was

8    after the phone call that my wife had called

9    from the commissary, I guess after she had

10    talked to Crane. And it seemed that everything

11    was going okay prior to Crane. Every time it

12    seemed that Crane was contacting her then it

13    was, it would get bad again. But prior to that

14    we had spent some time over at a friend Flores'

15    (phonetic) house and I was right there at the

16    house and everything. And everything seemed to

17    be going okay except for when Crane would, he

18    would call the police and say that I was at the

19    house.

20    **PRESIDING COMMISSIONER BIGGERS:** Did you

21    have any other altercations with Crane other

22    than the first one?

23    **INMATE BOONE:** No sir.

24    **PRESIDING COMMISSIONER BIGGERS:** Did you

25    ever even, because in the record I saw that you

26    all talked about it for awhile or something like

27    that, is that correct?

25

1        **INMATE BOONE:**  Well he tried to call the
2   house several times and he said -- the language
3   that he used wasn't all that great, you know.  I
4   would answer the phone and he would say, what
5   the fuck you doing there?  And nine times out of
6   ten I would hang up and a few times I said look,
7   I'm trying to get things straightened out with
8   my wife.  Don't bother contacting her and stay
9   away from her, don't contact her work or
10  anything.  But he just wouldn't do it.
11       **PRESIDING COMMISSIONER BIGGERS:**  What was
12  your rank at the time?
13       **INMATE BOONE:**  Staff Sergeant.
14       **PRESIDING COMMISSIONER BIGGERS:**  It was
15  Staff Sergeant?
16       **INMATE BOONE:**  Yes sir.
17       **PRESIDING COMMISSIONER BIGGERS:**  And what
18  was Crane?
19       **INMATE BOONE:**  Lance Corporal.  And when
20  I talked to Major -- I can't recall his name.
21  When I talked, initially talked to the
22  commanding officer he told me that Crane was
23  nothing but a piece of shit in his eyes.  And he
24  said, I'm going to do everything in my power to
25  try to help you.  And I said, I appreciate that
26  sir because I really need the help.  When the
27  phone calls wouldn't stop threatening my life

26

1    and threatening to kill my wife then I said, I

2    need to talk to you sir.  And at that point he

3    said, what do you want me to do, be a watchdog?

4         PRESIDING COMMISSIONER BIGGERS:  Who said

5    that, the Major?

6         INMATE BOONE:  The Major, yes sir.  I

7    said no sir, I don't want you to do that, I need

8    your help with this matter.  Because Crane was

9    on leave at the time and that permitted him to,

10    instead of being at work on the base that

11    permitted him to do whatever he wanted to do as

12    far as calling my house, driving by the house

13    and --

14         PRESIDING COMMISSIONER BIGGERS:  Okay.

15    You got a date.

16         INMATE BOONE:  Yes sir.

17         PRESIDING COMMISSIONER BIGGERS:  Back

18    in --

19         INMATE BOONE:  2001.

20         PRESIDING COMMISSIONER BIGGERS:  2001 and

21    it was reversed.

22         INMATE BOONE:  Yes sir.

23         PRESIDING COMMISSIONER BIGGERS:  What

24    have you done to show -- Governor Davis is the

25    one that signed, that reversed it.

26         INMATE BOONE:  Yes sir.

27         PRESIDING COMMISSIONER BIGGERS:  What

27

1   have you done.  Have you gotten a chance to read

2   down and read what he was concerned about in his

3   reversal?

4          INMATE BOONE:  Yes sir, yes sir.

5          PRESIDING COMMISSIONER BIGGERS:  What

6   have you done to change that?

7          INMATE BOONE:  The only obstacle that I'm

8   having problems with is the housing, everything

9   else I have covered.  But I know -- I have a lot

10   of information for the San Bernardino area.  And

11   I know that if I do have a problem with housing

12   that a parole officer will help me find housing.

13   Because I am to be treated as any other parolee

14   that will be out there.  I know that guys leave

15   here every day that don't have a place to go.

16          PRESIDING COMMISSIONER BIGGERS:  I don't

17   know, I think you're wrong about that.  They

18   haven't left from me without a place to go.

19          INMATE BOONE:  Well, that's -- from guys

20   that I've talked to over the years, some of them

21   they don't have any family or anything.

22          PRESIDING COMMISSIONER BIGGERS:  That's

23   rumor mill on the, on the rumor mill.

24          INMATE BOONE:  I understand that, yes

25   sir.

26          PRESIDING COMMISSIONER BIGGERS:  Okay.

27   In order for -- And I can speak for me.  I

28

1    cannot speak for the Deputy Commissioner and

2    he'll be talking to you very shortly.

3         **INMATE BOONE:**  Yes sir.

4         **PRESIDING COMMISSIONER BIGGERS:**  Every

5    one that I have talked to, to include those that

6    I have given a date to --

7         **INMATE BOONE:**  Yes sir.

8         **PRESIDING COMMISSIONER BIGGERS:**  They

9    have had a place to go, places to go.

10        **INMATE BOONE:**  Yes sir.

11        **PRESIDING COMMISSIONER BIGGERS:**  Because

12   I don't want to give somebody a date and put

13   them out on the street with the hope that

14   somebody is going to do this, this or this.

15        **INMATE BOONE:**  Yes sir.  Yes sir, I

16   understand that.

17        **PRESIDING COMMISSIONER BIGGERS:**  And I

18   have never allowed anyone to get a date from

19   me --

20        **INMATE BOONE:**  Yes sir.

21        **PRESIDING COMMISSIONER BIGGERS:**  Unless I

22   see that they have a place to go.  Whether it's

23   a halfway house, whether it's a, you know, a

24   friend.

25        **INMATE BOONE:**  Yes sir.

26        **PRESIDING COMMISSIONER BIGGERS:**  Or

27   whatever.  I've got letters.

29

1          INMATE BOONE:  I have that.

2          PRESIDING COMMISSIONER BIGGERS:  You have

3  letters for what?

4          INMATE BOONE:  I have a letter from

5  Shirley Gerhard (phonetic) that says I can stay

6  with her.  But the problem with that is it's not

7  from my county of commitment.

8          PRESIDING COMMISSIONER BIGGERS:  You have

9  to go back there.  And once you get down there

10  and go to the parole office then they in turn

11  can talk to you about moving out of the county.

12          INMATE BOONE:  I have the letter if you'd

13  like to see it from Shirley Gerhard.

14          PRESIDING COMMISSIONER BIGGERS:

15  (Overlapping).

16          INMATE BOONE:  Oh later on, okay.

17          PRESIDING COMMISSIONER BIGGERS:  Okay.

18  So that's the only thing that you said that you

19  were unable to do that when Governor Davis back

20  in '02 reversed you.

21          INMATE BOONE:  Well he talked about that

22  I hadn't filled out the papers to be transferred

23  to New Jersey and I had.  I sat down with my

24  counselor, Mr. Callahan (phonetic) and we filled

25  out the paperwork to have the parole transferred

26  from here to New Jersey where my support group

27  is, where all my family is at.

30

1      **PRESIDING COMMISSIONER BIGGERS:**  Yeah but

2  did New Jersey respond?

3      **INMATE BOONE:**  No sir, not that I know

4  of.  And I just went to my counselor again last

5  week and I asked her if I could fill out the

6  paperwork to have the process to begin and she

7  said that after I had the parole hearing then

8  she would sit down with me and fill out the

9  paperwork.

10      **PRESIDING COMMISSIONER BIGGERS:**  See, and

11  it may have been -- One of the things that I

12  think a lot of inmates don't understand is the

13  fact that just because you fill out the

14  paperwork, there is a process it has to go

15  through.

16      **INMATE BOONE:**  Yes sir, yes sir.

17      **PRESIDING COMMISSIONER BIGGERS:**  The

18  paperwork goes up to Sacramento.  Sacramento

19  looks at it and give their blessing.  Then they

20  send it to New Jersey.

21      **INMATE BOONE:**  Yes sir.

22      **PRESIDING COMMISSIONER BIGGERS:**  Then New

23  Jersey have to look through and say okay yeah,

24  we'll accept him.

25      **INMATE BOONE:**  Yes sir.

26      **PRESIDING COMMISSIONER BIGGERS:**  And then

27  it comes back to Sacramento and it's a joint

31

1  pact. So every state does not have a pact with

2  California.

3        **INMATE BOONE:**  Yes sir.

4        **PRESIDING COMMISSIONER BIGGERS:**  So I

5  don't know if New Jersey --

6        **INMATE BOONE:**  No, unfortunately they're

7  not.

8        **PRESIDING COMMISSIONER BIGGERS:**  They do

9  not?

10        **INMATE BOONE:**  No.

11        **PRESIDING COMMISSIONER BIGGERS:**  Okay,

12  see that's the problem.

13        **INMATE BOONE:**  Yes sir.

14        **PRESIDING COMMISSIONER BIGGERS:**  So now

15  there are other ways you could go about doing

16  that. You can have your family get in touch

17  with probably some political leaders and see if

18  they can work something out where they can get a

19  pact or something going. But it has to be done

20  from there.

21        **INMATE BOONE:**  Yes sir.

22        **PRESIDING COMMISSIONER BIGGERS:**  If they

23  don't have a pact.

24        **INMATE BOONE:**  Yes sir they don't, I

25  checked on that.

26        **PRESIDING COMMISSIONER BIGGERS:**  You did

27  check on that.

32

1            INMATE BOONE:  Yes sir.

2            PRESIDING COMMISSIONER BIGGERS:  Okay.

3    Well see that's the problem.  But anyway.  And

4    there was another thing also.  He talked a

5    little bit about the lack of remorse as to the

6    killing of the victim.  Is that true?

7            INMATE BOONE:  No sir.  I have always had

8    a lot of remorse for my wife for what I did.

9            PRESIDING COMMISSIONER BIGGERS:  Well the

10   thing about it, what really troubles me is the

11   fact that you shot -- you said you were worried

12   about your child.  If you had killed yourself

13   after you killed your wife what about your

14   child?

15           INMATE BOONE:  And I know that was a big

16   issue.  Prior to any of this, long before any of

17   this happened I had talked to my sister and also

18   my parents.  Because I wanted to have something

19   in place if something -- and this is probably, I

20   don't know, '82, '83, something like that.  We

21   just wanted to get our affairs in order just in

22   case something happened to my wife and I so that

23   my daughter would be well taken care of.  And my

24   sister had stepped in and said that she would do

25   that.  And my parents.  And they're the ones

26   that ultimately took my daughter.

27           PRESIDING COMMISSIONER BIGGERS:  And

33

1   that's where your daughter is now?

2          **INMATE BOONE:**  Yes sir, she's at home

3   right now.

4          **PRESIDING COMMISSIONER BIGGERS:**  How old

5   is she now?

6          **INMATE BOONE:**  She's 27.

7          **PRESIDING COMMISSIONER BIGGERS:**  Twenty-

8   seven.

9          **INMATE BOONE:**  She has a granddaughter.

10  She has a daughter right now.  I've seen

11  pictures of her but I haven't seen her in person

12  yet.

13         **PRESIDING COMMISSIONER BIGGERS:**  But see

14  again, you know.  Did you ever think about all

15  that when you were trying to kill yourself?

16         **INMATE BOONE:**  That was, that was part of

17  it when I wrote out the will.  I asked that my

18  parents would look after my daughter.

19         **PRESIDING COMMISSIONER BIGGERS:**  But

20  don't you think it would have been best to have

21  said hey, I'm breaking this off?

22         **INMATE BOONE:**  Oh yes sir, that would

23  have --

24         **PRESIDING COMMISSIONER BIGGERS:**

25  (Overlapping) daughter.

26         **INMATE BOONE:**  Yes sir.

27         **PRESIDING COMMISSIONER BIGGERS:**  Rather