# EXHIBIT 6

## INDETERMINATE SENTENCE PAROLE RELEASE REVIEW
(Penal Code Section 3041.2)

**DONALD BOONE D-37952**
**SECOND-DEGREE MURDER**

AFFIRM: _____

MODIFY: _____

REVERSE: \_\_\_\_X\_\_\_\_\_

On May 3, 1986, 32-year-old Donald Boone shot his wife, Nhung Boone, to death and then tried to kill himself.

Donald Boone, a 13-year veteran of the Marine Corps, unexpectedly returned home on April 18, 1986, after spending approximately one year overseas on assignment. When he entered his home, he found his wife wearing only a bathrobe and embracing another Marine, Jeffrey Crane. Donald and Jeffrey fought briefly, and Jeffrey left the house. The next day, Donald ordered Nhung and her two daughters out of the house, and threatened to kill Nhung if she did not leave.

Nhung sought and was granted a temporary restraining order against Donald. Donald subsequently appeared at Nhung's home and attempted to take one of the daughters. He was arrested for violating the restraining order, but later released.

In the days leading up to the murder, Donald and Nhung reunited and attempted to reconcile. On the day of the murder, Jeffrey called Donald at his home. Donald told Jeffrey that Nhung wanted nothing to do with him. Later that day, Nhung spoke to Donald on the phone and told Donald that she did not want to save their marriage. When Nughn returned home from work, Donald retrieved a .12 gauge shotgun from the bedroom and went to the couch, where his wife was resting. He pointed the gun at Nhung and shot her two times in the chest at close range, killing her. Donald phoned his next door neighbors, who were watching one of the daughters at the time, and informed them that he killed Nhung and intended to commit suicide. He sat on the couch next to Nhung and shot himself once in the chest. Donald was hospitalized for his self-inflicted injuries, but ultimately survived the gunshot wound.

Donald Boone, who had no prior criminal record at the time of the murder, subsequently pled guilty to second-degree murder with the use of a firearm. He was sentenced to 15 years to life for murder, plus two consecutive years for the firearm enhancement.

Donald Boone, D-37952
Second-Degree Murder
Page 2 of 3

During his incarceration for the life offense, Mr. Boone was disciplined one time in 2002 for refusing a cell move. He was also counseled twice for minor misconduct, most recently in 1993.

I considered various positive factors in reviewing whether Mr. Boone is suitable for parole at this time. Mr. Boone made efforts in prison to enhance his ability to function within the law upon release. He took courses related to infectious diseases. He received vocational training in landscaping, welding, small engine repair, auto repair, and office machine repair. He held institutional jobs such as clerk, auto repairman, and desk assembler, among other things. He also participated in self-help and therapy, including Life Skills, Category X, Anger Control Group, Reality and Decision Making Therapy Group, Balanced Reentry Activity Group, Reengaging into Society, and Rational Behavior Therapy Group, in addition to some individual therapy. He maintains seemingly solid relationships and close ties with supportive family and friends, and he received favorable evaluations from various correctional and mental-health professionals over the years.

Despite the positive factors I considered, the second-degree murder for which Donald Boone was convicted was especially grave, considering the level of premeditation involved. A witness told a San Bernardino County Sheriff's detective that, days before the murder, Donald sent Nhung flowers with a note that read, "we lived [sic] together or die together." Donald told the 2005 Board that, on the day of the murder, his wife called him from work. According to a witness's statement in the San Bernardino County Sheriff's supplementary report, during the telephone conversation, Nhung told Donald she "can go out with whoever she wants to," and she intended to seek a divorce. Donald told the 2005 Board that, after speaking with his wife, he wrote a will, in which he expressed his intent to kill her and himself. He also wrote, "[Nhung] leaves me no choice." When Nhung subsequently returned home from work, Donald retrieved a shotgun from his room. According to Donald's statement to investigating officers, he approached Nhung, who was lying on the couch, and said, "[y]ou made me do this." Donald shot his wife two times, and later shot himself. As he told the 2005 Board, approximately one to one and a half hours passed between the time he decided to kill his wife and the time he actually shot her. The gravity of the second-degree murder committed by Donald Boone is alone sufficient for me to conclude presently that his release from prison would pose an unreasonable public-safety risk.

Mr. Boone told the 2006 Board that the "commitment offense was committed as a result of significant marital stress." The 2006 Board, however, did not find that the offense was the result of significant stress. In any event, even if Mr. Boone was under stress when he perpetrated the life offense, I believe that factor alone is presently insufficient to mitigate the nature and circumstances of the murder he committed.

Additionally, Mr. Boone's parole plans remain unsettled. Although he last resided in San Bernardino County, he made plans to live and work with a friend in Santa Cruz County. The 2006 Board, however, did not approve his transfer to Santa Cruz County. Furthermore, although Mr. Boone applied to transfer his parole supervision to New Jersey, it is uncertain whether the request will be granted. It is essential to Mr. Boone's success on parole that he have a place to live and a legitimate way to provide financial support for himself immediately upon release.

Donald Boone, D-37952
Second-Degree Murder
Page 3 of 3

At age 52 now, after being incarcerated for more than 20 years, Mr. Boone made some creditable gains in prison, including accepting responsibility for his actions and expressing remorse. But given the current record before me, and after carefully considering the very same factors the Board must consider, I find that the negative factors weighing against Mr. Boone's parole suitability presently outweigh the positive ones tending to support it. Accordingly, because I believe his release would pose an unreasonable risk of danger to society at this time, I REVERSE the Board's 2006 decision to grant parole to Mr. Boone.

Decision Date: 12/21/2006

ARNOLD SCHWARZENEGGER
Governor, State of California