# EXHIBIT 7

REC'D CLS DOCKETING

MC-275 GLORIA

Name **Donald W. Boone**

Address **Correctional Training Facility**

**P.O. Box 689 (ED-67L)**

**Soledad, CA 93960**

CDC or ID Number **D-37952**

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN BERNRADINO

(Court)

| | |
|---|---|
| ~~DONALD W. BOONE~~<br>Petitioner<br><br>vs.<br><br>**ARNOLD SCHWARZENEGGER,**<br>Respondent | **PETITION FOR WRIT OF HABEAS CORPUS**<br><br>No. SCWHSS-9290<br><br>*(To be supplied by the Clerk of the Court)* |

### INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 at seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

## P R O O F   O F   S E R V I C E

CASE NAME:   BOONE v. SCHWARZENEGGER

CASE NO. :   SWHSS-9290

I sent the writ to the Court without service.  THe Court notified
me that I had to serve you and send the PROOF OF SERVICE to the
court, which I did.


*Donald W. Boone*
Donald W. Boone
26 April, 2007,

**This petition concerns:**

☐ A conviction                    ☐ Parole

☐ A sentence                      ☐ Credits

☐ Jail or prison conditions       ☐ Prison discipline

☒ Other (specify): GOVERNOR'S REVERSAL OF GRANT OF PAROLE

1. Your name: **Donald W. Boone**

2. Where are you incarcerated? **CTF-East Dorm, P.O. Box 689, Soledad, CA 93960**

3. Why are you in custody?   ☒ Criminal Conviction   ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   **Second degree murder**

   b. Penal or other code sections: **187**

   c. Name and location of sentencing or committing court: **San Bernardino County Superior Court, Barstow, Calif.**

   d. Case number: **BCR-667**

   e. Date convicted or committed: **August 22, 1986**

   f. Date sentenced: **August 22, 1986**

   g. Length of sentence: **15 years to life**

   h. When do you expect to be released? **Before now**

   i. Were you represented by counsel in the trial court?   ☐ Yes.   ☐ No. If yes, state the attorney's name and address:
   **N/A**

4. What was the LAST plea you entered? *(check one)*

   ☐ Not guilty   ☒ Guilty   ☐ Nolo Contendere   ☐ Other:

5. If you pleaded not guilty, what kind of trial did you have?

   ☐ Jury   ☐ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

6. GROUNDS FOR RELIEF
   **Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

   _____ SEE APPENDIX "A" ATTACHED HERETO, STARTING A PAGE 5 _____

   _____ CLAIMS I IS A QUESTION OF LAW: CLAIM II IS A QUESTION OF FACT _____

   _____ AND LAW: CLAIM III IS THE CLAIM AGAINST THE DECISION _____

   _____

   a. Supporting facts:
      Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly what to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

      _____

      _____

      _____

      _____

      _____

      _____

      _____

      _____

      _____

      _____

   b. Supporting cases, rules, or other authority (optional):
      *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

      _____ SEE PAGE 16 FOR ANSWERS TO 6(b) RELEVANT TO CLAIM III _____

      _____

      _____

      _____

8   Did you appeal from the conviction, sentence, or commitment?   ☐ Yes.   ☒ No.   If yes, give the following information

    a.   Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

    b.   Result: _____   c.   Date of decision: _____

    d.   Case number or citation of opinion, if known: _____

    e.   Issues raised:   (1) _____

            (2) _____

            (3) _____

    f.   Were you represented by counsel on appeal?   ☐ Yes.   ☐ No.   If yes, state the attorney's name and address, if known:

    _____

9.   Did you seek review in the California Supreme Court?   ☐ Yes.   ☐ No.   If yes, give the following information:

    a.   Result: _____   b.   Date of decision: _____

    c.   Case number or citation of opinion, if known: _____

    d.   Issues raised:   (1) _____

            (2) _____

            (3) _____

10.   If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    __Violation of plea contract was not ripe for adjudication.__

11.   Administrative Review:

    a.   If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

                    THERE IS NO ADMINISTRATIVE REVIEW

    b.   Did you seek the highest level of administrative review available?   ☐ Yes.   ☐ No.
    *Attach documents that show you have exhausted your administrative remedies.* N/A

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?    ☐ Yes. If yes, continue with number 13.    ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result *(Attach order or explain why unavailable):* _____

    (5) Date of decision: _____

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result *(Attach order or explain why unavailable):* _____

    (5) Date of decision: _____

  c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

_____

_____

16. Are you presently represented by counsel?    ☐ Yes.    ☒ No.  If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court?    ☒ Yes.    ☐ No.  If yes, explain:

**Fed. Dist. Ct. re Governor Davis' reversal of parole grant in 2002**

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
    **This Court has jurisdiction.**

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 3-7-07    *Filed*    ► *Donald W. Boone*
                                                    (SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]                    PETITION FOR WRIT OF HABEAS CORPUS
                                                    – 4 –

A P P E N D I X    A

Answers to 6, et seq.

Claim I

**PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION WAS VIOLATED WHEN THE GOVERNOR'S DECISION
WAS NOT SUPPORTED BY A PREPONDERANCE OF THE EVIDENCE.**

---

THIS IS A QUESTION OF LAW.

When in 2002 the California Supreme Court held in In re

Rosenkrantz (2002) 29 Cal.4th 616, 655-658 that the Board of Parole

Hearings (hereafter Board) decision to deny parole or the Governor's

reversal of a grant of parole by the Board (collectively the

Executive) the decision need only be supported by "some evidence"

and judicial review is then for "some evidence," the Rosenkrantz

court did not have the benefit of Hamdi v. Rumsfeld (2004) 542 U.S.

507, 124 S.Ct. 2633, 2651 [the High Court holding that the "'[some

evidence]' standard therefore is ill suited to the situation in which

a habeas petitioner has received no prior proceedings before any

tribunal and had no prior opportunity to rebut the Executive's factual

assertions before a neutral decisionmaker."]

The Rosenkrantz court relied on Superintendent v. Hill (hereafter

Hill) (1985) 472 U.S. 445.  Hill was ambiguous as to when the "some

evidence" standard applied -- at the administrative decision level,

or upon judicial review?  That ambiguity was clarified in Hamdi v.

Rumsfeld, supra, 542 U.S. 507, 124 S.Ct. 2633, 2651.  Moreover, there

are three (3) distinctions in California parole hearings and Hill:

(1) Hill was a prison disciplinary hearing conducted by prison

administrators, California parole hearings are actually sentencing

- 5 -

hearings transferring the formal pronouncement of the sentence from a court to an Executive agency,(In re Roberts (2005) 36 Cal.4th 575, 586, 587-590); (2) Hill did not have a "liberty interest" in the outcome, thus the minimal "some evidence" satisfied due process, California's indeterminately sentences prisoners have a "liberty interest" in parole (In re Rosenkrantz, supra, 29 Cal.4th, at 654; Sass v. California Board of Prison Terms (9th Cir. 2006) 461 F.3d, 1123, 1127), and once a release date is established a greater "expectation of liberty" (In re Rosenkrantz, supra, 29 Cal.4th, at 656); and (3) Hill could not point to any state statute or regulation that required any standard of proof, whereas California Code of Regulations, Title 15, § 2400(b)(50) requires "a preponderance of the evidence" in parole decisions.

Although Hamdi v. Rumsfeld was a case involving a terrorist, the High Court addressed the standard of proof at the Executive level to be "a preponderance of the evidence" and the standard of judicial is then "some evidence," assuming of course the standard of proof was "a preponderance of the evidence." We know that is not the case in California parole decisions. The AEDPA does not require that state and federal courts to wait for nearly identical factual case before a legal rule must be applied (Yarborough v. Alvarado (2004) 541 U.S. 652, 664).

Petitioner asks, logically: If the standard of proof is "some evidence," and the standard of judicial review is "some evidence," how then does the "some evidence" standard apply itself? If terrorist are entitled to "a preponderance of the evidence," is Petitioner, haing a "liberty interest" in parole entitled to less?

- 6 -

Claim II

**PENAL CODE SECTION 3041.2 IS UNCONSTITUTIONAL IN ITS APPLICATION VIOLATING THE EQUAL PROTECTION AND DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

THIS IS A MIXED QUESTION OF FACT AND LAW

In 1988 Penal Code § 3041.2 was implemented, reading: "(a) During the 30 days following the granting, denial, revocation, or suspension by a parole authority...." As the statute was implemented, it was to be a neutral law, the Governor reviewing denial of parole as well as grants of parole.

We now have 19 years of history with Penal Code § 3041.2. Since the implementation of Penal Code § 3041.2 in 1988, not once has the Board's Decision Review Unit forwarded a denial of parole to a governor for review, and not once has any governor requested to review a denial of parole. Not once. Thus, the law is not being applied equally as intended, but rather strictly as political tool for political gain (In re Dannenberg (2005) 34 Cal.4th 1061, 1105, dissenting opinion [the Executive has "little to gain and potentially much to lose by granting parole, and accordingly, the incentive to give only pro forma consideration to the parole decision is strong"]).

The California courts have "an obligation, however, to look beyond the facial validity of a statute that is subject to possible unconstitutional administration since a law though fair on its face and impartial in appearance may be open to serious abuses in administration and courts may be imposed upon if the substantial rights of the persons charged are not adquately safeguarded at every stage of the proceedings" (In re Rodriquez (1975) 14 Cal.3d 639,

- 7 -

648 [internal quotation marks omitted], quoting <u>Minnisota ex rel</u> <u>Pearson v. Probate Court</u> (1940) 309 U.S. 270, 277). Penal Code § 3041.2, although appearing "fair on its face" has proven to be very abused, being used to create a no parole policy. After governors Wilson and Davis having been found by federal courts to have a no parole policy, Governor Schwarzenegger is allowing just enough indeterminately sentenced prisoners to be paroled to escape close scrutiny by the courts, but he is still abusing Penal Code § 3041.2, and using it irresponsibly by reversing grants of parole of prisoners who are not a current threat to public safety when the prisons are in a crisis of overcrowding.

This claim requires an evidentiary hearing to adequately develop the facts. Petitioner respectfully requests an evidentiary hearing.

///////

///////

///////

## Claim III

IT WAS A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS
GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION FOR THE GOVERNOR TO REVERSE
PETITIONER'S GRANT OF PAROLE FOR THE SECOND TIME BASED
ON UNRELIABLE EVIDENCE AND THERE WAS NOT A SCINTILLA OF
EVIDENCE THAT PETITIONER IS A CURRENT THREAT TO PUBLIC
SAFETY; VIOLATING PETITIONER'S CONTRACT WITH THE STATE.

Supporting facts:

Comes now Donald Boone (hereafter Petitioner) with the facts
in support of his claim.  For the sake of argument, and in that the
facts of the offense 20 years ago do not weigh against current threat
to public safety, Petitioner concedes to the facts of the offense
as presented by the governor in his decision dated December 21, 2006
(EXHIBIT 1, p. 1), received on January 10, 2007.  Whether or not
the facts as presented by the governor are true, many are not and
are nothing more than lies of Petitioner's deceased wife and hearsay,
one thing is true, Petitioner killed his wife with a 12 gauge shotgun,
pulling the trigger on both barrels at once, killing her instantly,
then reloading and shooting himself.

On April 18, 1986 Petitioner returned home from overseas
deployment with the Marine Corps for 12 months.  When Petitioner
entered his home he found his wife, Nhung Boone, in her bathrobe,
in the arms of her paramour, kissing.  After Petitioner returning
home, he not only found his wife in the arms of another man, but
found out that his wife was neglecting their seven year old daughter
and prostituting herself, bringing strange men home and having sex
with them while his 7 year old daughter was in the house, even
receiving a detailed letter from her paramour of her sexual exploits.
After all that, Petitioner forgave her and tried to reconcile the

- 9 -

marriage, but she rebuffed his pleas, telling him she can see whoever she wants. After one last plea, Petitioner committed the instant offense.

Petitioner was charged with one count of second degree murder in violation of Penal Code § 197,[1/] the unlawful killing of a human being with malice aforethought (EXHIBIT 2). Pursuant to Penal Code § 1192.1, Petitioner entered a plea of guilty to second degree murder (EXHIBIT 3), with the understanding that he would have a parole period "of three or four years" (EXHIBIT 3, p. 3).

After Petitioner was found suitable for parole by the Board in 2001, then Governor Davis reversed the decision on March 19, 2002 (EXHIBIT 4).

Save one disciplinary CDC 115 for refusing to move into a dorm to avoid a physical confrontation with skin heads who had previously threatened Petitioner, he maintained his exemplary behavior.

In 2003, when correctional officials still made risk assessments, four correctional officials believed, "[c]onsidering the commitment offense, prior record, no contact with law enforcement, and prison adjustment...the prisoner would probably pose a low degree of threat to the public at this time, if released from prison" (EXHIBIT 5, p. 3).

In 2004, two of the Board's own forensic experts, Dr. Stack and Dr. Zika, completed a psychological evaluation with risk assessment for the Board (EXHIBIT 6). This is the psychological evaluation the Board relied on when Petitioner was found suitable

---

1. All codes and regulations are California, unless otherwise noted.

for parole (EXHIBIT 7, HT 62-64; 99-101).[2/]   Petitioner received
a Global Assessment of Functioning (GAF) Score of 90, the highest
attainable score (EXHIBIT 6, p. 2), and the evaluation documented
the many therapy and self-help groups Petitioner completed (Id.,
at pp. 2-3).

   Under assessment of dangerousness, evaluating Petitioner's
CURRENT threat to public safety, Dr. Stack clearly explained that
the CDC 115 was not for violence and indicated that Petitioner's
"violence potential within a controlled setting is estimated to be
significantly below average relative to this level 2 inmate
population" (Id., at p. 3).  More importantly, "[i]f released to
the community, his violence potential is estimated to be no more
than the average citizen in the community.  This assessment echoes
the conclusion of Dr. Terrini in his 2000 board report" (Id.,
at p. 3).

   The first reason the governor gives for reversing the Board's
decision is "the second-degree murder for which Donald Boone was
convicted was especially grave, considering the level of premeditation
involved" (EXHIBIT 1, p. 2).  The governor then relies on third-hand
hearsay taken from a police report, Ms. Flores stating that Mrs.
Boone told her that Petitioner sent his wife "flowers and a note
that read, 'we lived [sic] together or die together'" (Id.).  THAT
IS AN ABSOLUTE LIE on his wife's part.  Neither did Petitioner
"order[] Nhung and her two daughters out of the house, and threatened
to kill Nhung if she did not leave" (Id., at p. 1).  That too is
a lie.  It is true that Petitioner, at the end of his ropes and

---

2.  References to parole hearing transcript will be noted by HT followed
    by page number, e.g., (HT 1).

emotionally strained, wrote out a will as the governor states.
Petitioner did not, however, kill his wife as the governor states,
but rather made one last plea to save the marriage.  In all this,
however, the governor makes no rational connection between the
commitment offense and Petitioner's <u>current</u> threat to public safety.

The second reason the governor gives is: "Mr. Boone told the
2006 Board that the 'commitment offense was committed as a result
of significant marital stress.'  The 2006 Board, however, did not
find the offense was the result of significant stress" (EXHIBIT 1,
p. 2).  First, Petitioner was stating what forensic experts have
previously stated and are a suitability factor within the Board's
own regulations; second, the Board did indeed find: "The crime was
committed during a brief period of extreme mental and emotional
trauma" (EXHIBIT 2, HT 104).  Explain the difference.  The Board
also noted that this offense "was a one time occurrence and that
you acted irrationally" (HT 101), and "[i]n mitigation we noticed
that the crime was committed during an unusual situation unlikely
to reoccur...psychological reports...all indicated that this seemed
like it just was a one time thing...during a brief period of extreme
mental and emotional trauma" (HT 104).  The governor continues: "In
any event, if Mr. Boone was under stress...I believe that factor
alone is presently insufficient to mitigate the nature and
circumstances of the murder committed" (<u>Id</u>.).  The governor's opinion
is a lay opinion contravening the experts in Petitioner's case.

The third and final reason the governor gives is: "Mr. Boone's
parole plans remain unsettled" (EXHIBIT 1, p. 2).  Noting, that
Petitioner last resided in San Bernardino County, but "made plans

- 12 -

to live and work in Santa Cruz County. The 2006 Board, however, did not approve his transfer to Santa Cruz County" (Id.).

The governor then goes on, "although Mr. Boone applied to transfer his parole supervision to New Jersey, it is uncertain whether the request will be granted. It is essential to Mr. Boone's success on parole that he have a place to live and a legitimate way to provide financial support for himself immediately upon release" (Id.).

There was a thorough discussion of parole plans. Petitioner brought to the Board's attention that paroles provides housing for any prisoner that does not have a residence to parole to and that prisoners leave the prison everyday with no residence to parole to. The Board denied this (HT 27-28). The Board told Petitioner after paroling to San Bernardino County, if that were the case, he could request a transfer to Santa Cruz County where Petitioner has a residence and job offer (HT 29), but the Board focused on Petitioner's transfer of parole to New Jersey (HT 29-31; 65-71), even making a phone call to assure Petitioner can transfer parole to New Jersey (HT 98). In 2001 the Board approved Petitioner's parole transfer to Alameda County, and in spite of what the current Board believed, they could have transferred Petitioner's parole to Santa Cruz County, but the focus was on New Jersey.

While the governor stated that Petitioner's parole transfer to New Jersey "remained unsettled" and "it is uncertain whether the request will be granted" (EXHIBIT 1, p. 2), New Jersey's response was due January 4, 2007, the governor's staff rubber stamped his signature on December 21, 2006. New Jersey DID accept Petitioner's transfer. One of the reasons Governor Davis used to reverse

Petitioner's grant of parole in 2001 was that Petitioner "has not completed the necessary forms required for approval of transfer" (EXHIBIT 4, p. 2-3), when Petitioner did indeed fill out and submit the forms and they were in Petitioner's file.

Based upon the facts and circumstances of the commitment offense, the victim being Petitioner's wife and she provided the motive (HT 103-104), the Board fixed Petitioner's total term, deducting conduct credits, at 168 months (HT 105), or, 13 years 8 months. Petitioner was a good 6 years past the legislatively prescribed punishment for the facts and circumstances of his offense.

### C O N C L U S I O N

Based on the foregoing facts, court records in this case, and the accompanying memorandum of law, Petitioner requests the Court issue an Order to Show Cause why the writ should not be granted and Petitioner released to parole within 10 days and all excess custody credits applied to the three or four period of parole that was in the plea agreement at sentencing. Petitioner will <u>not</u> respond to a request for an informal response, and if an Order to Show Cause should issue will not agree to any requests for enlargement of time, especially by appointed counsel.

FILED

Date: 3-7-07

Respectfully submitted,

*Donald W. Boone*
Donald W. Boone
Petitioner in pro per

- 14 -

## V E R I F I C A T I O N

I, <u>Donald W. Boone</u>, declare under penalty of perjury
that I have read the foregoing facts and hereby state them to be
true and correct, and that the exhibits attached hereto in support
of the facts are true copies of the original documents, doing so
this <u>7th</u> day of <u>MARch</u>, 2007 at Soledad, California.

*Filed*

Donald W. Boone
Petitioner in pro per

## P R A Y E R   F O R   R E L I E F

I, <u>Donald W. Boone</u>, hereby state that I have no other
plain or speedy remedy save habeas corpus, and therefore pray that
this Honorable Court will:

1. Order the respondent to show cause why the writ should
   not be granted;

2. Appoint counsel to protect the rights of Donald W. Boone
   against the weight and resources of the state;

3. Declare the rights of the parties;

4. Order discovery and/or an evidentiary hearing as needed to
   further develop the facts of the case;

5. Allow counsel to orally argue the case before the Court;

6. Grant the writ of habeas corpus; and

7. Grant any other relief in the furtherance of justice.

Date: <u>3-7-07</u>   *Filed*

Respectfully submitted,

Donald W. Boone
Petitioner in pro per

Claim III

IT WAS A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS
GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION FOR THE GOVERNOR TO REVERSE
PETITIONER'S GRANT OF PAROLE FOR THE SECOND TIME BASED
ON UNRELIABLE EVIDENCE AND THERE WAS NOT A SCINTILLA OF
EVIDENCE THAT PETITIONER IS A <u>CURRENT</u> THREAT TO PUBLIC
SAFETY; VIOLATING PETITIONER'S CONTRACT WITH THE STATE.

---

<u>Supporting cases and authorities</u>:

A.   <u>In That Petitioner Entered A Contract with the State for the
     Minimum Elements of Second Degree Murder, the Governor Violated
     Petitioner's Constitutional Guarantee to a Jury Finding on Every
     Element of the Offense.</u>

Petitioner was charged with second degree murder, "he did

unlawfully kill Nhung My Boone, a human being, with malice

aforethought" (EXHIBIT 2), and pled guilty as charged (EXHIBIT 3).

In doing so he had a reasonable expectation that he would be released

on parole within the legislatively prescribed range for second degree

murder (Cal. Code Regs., tit. 15, § 2403(d)), 15 to 21 years.   In

fixing Petitioner's term upon finding him suitable for parole, it

was done within the range of legislatively prescribed punishment

and the term was indeed fixed at 228 months (HT 103), or 19 years.

The governor reversed based on the element of "premeditation,"

an element of first degree murder.   The governor not only violated

Petitioner's contract with the state for the minimum elements of

the offense and to therefore be punished accordingly and no more

(see <u>Santobello v. New York</u> (1971) 404 U.S. 257; <u>Henderson v. Hogan</u>

(1976) 426 U.S. 637; <u>Hamling v. United States</u> (1974) 418 U.S. 87;

<u>People v. Cunningham</u> (1996) 49 Cal.App.4th 1044; <u>People v. Shelton</u>

(2006) 37 Cal.4th 759; <u>People v. Jerome</u> (1984) 160 Cal.App.3d 1087),

but also violated his Sixth Amendment guarantee to a jury trial on

every element of the offense (see <u>Cunningham v. California</u> (2007)

\_\_\_ U.S. \_\_\_, 127 S.Ct. 856; <u>Blakely v. Washington</u> (2004) 542 U.S.

296; <u>Apprendi v. New Jersey</u> (2000) 530 U.S. 466; <u>Jones v. United</u>

<u>States</u> (1999) 526 U.S. 227).

B.  <u>The Commitment Offense Twenty Years After the Fact Is No Longer</u>
    <u>Reliable Evidence in Predicting Current Threat to Public Safety.</u>

Petitioner's commitment offense was on May 3, 1986, twenty (20)

years prior to the parole hearing at issue.  Petitioner's MEPD was

fixed at December 4, 1996, ten (10) years prior to the parole hearing

at issue.

Petitioner entered into a contract with the state of California

agreeing to be punished for second degree murder in exchange for

his plea.  Petitioner's testimony at his parole hearings is the only

testimony under oath; all other statements are heresay.

As opined by the First Appellate District in <u>In re Scott II</u>

(2005) 133 Cal.App.4th 573, at 594-595:

> "The Governor's assumption that a prisoner may be deemed unsuitable for release
> on the basis of the commitment offense 'alone' is correct [citation], but the
> proposition must be properly understood.  The commitment offense is one of only
> two factors indicative of unsuitability a prisoner cannot change (the other being
> 'Previous Record of Violence').  Reliance on such an immutable factor 'without
> regard to or consideration of subsequent circumstances' may be unfair [citation];
> and 'runs contrary to the rehabilitative goals espoused by the prison system
> and could result in a due process violation.'  [Citation.]  The commitment offense
> can negate suitability only if circumstances of the crime reliably established
> by evidence in the record rationally indicate that the offender will present
> an unreasonable risk if released from prison.  Yet, the predictive value of the
> commitment offense may be very questionable after a long period of time.
> [Citation.]  Thus, denial of release based solely on the basis of the gravity
> of the commitment offense warrants especially close scrutiny."

The <u>only</u> <u>statutory</u> <u>reason</u> to deny Petitioner parole is the

"timing and gravity" of the offense (Penal Code § 3041(b)).  Thus,

the question is not was Petitioner a threat to public safety 20 years

ago, but rather, is Petitioner <u>currently</u> a threat to public safety?

Even twenty years ago, though, the only person Petitioner was a threat
to, under unusual circumstances never to reoccur, was his wife.
An indeterminately sentenced prisoner is to be granted parole unless
the prisoner "is presently too dangerous to grant a fixed parole
release date" (In re Dannenberg, supra, 34 Cal.4th, at 1080; see
also Sass v. California Board of Prison Terms, supra, 461 F.3d, at
1135, Reinhardt, Circuit Judge, dissenting [evidence must show current
threat to public safety; and the recent precedent setting case of
In re Lee (2006) 143 Cal.App.4th 1400, 49 Cal.Rptr.3d, 931, 937,
940-941, petition for review denied, request for depublication denied
(2/7/2007) ["To deny parole, the reason must relate to a defendant's
continued unreasonable risk to public safety."]

Recently opined by the Sixth Appellate District, "The nature
of human activity is such that, given its subjective assessment,
the Board could always find some aspect of the crime that exceeds
the minimum elements. Rather, an unsuitability determination must
be predicated on 'some evidence that the particular circumstances
of [the prisoner's] crime -- circumstances beyond the minimum elements
of his conviction -- indicated exceptional callousness and cruelty
with trivial provocation, and thus suggested he remains a danger
to public safety.' (In re Dannenberg, supra, 34 Cal.4th at p. 1098)"
(In re Weider, (2006) ___ Cal.App.4th ___, 2006 DJDAR 15795, 15801
(12/6/2006); c. 1). See also In re Scott, supra, 133 Cal.App.4th,
at 595; In re Elkins (2006) 144 Cal.App.4th 475, 50 Cal.Rptr.3d 503,
518, 520, 521; In re Shaputis (2005) 135 Cal.App.4th 217, 231-232;
Biggs v. Terhune (9th Cir. 2003) 334 F.3d 910, 915; Irons v. Warden
of California State Prison-Solano (E.D. Cal. 2005) 358 F.Supp.2d

936; <u>Martin v. Marshall</u> (N.D. Cal. 2006) 431 F.Supp.2d 431 F.Supp.2d
1038; <u>Sanchez v. Kane</u> (C.D. Cal. 2006) 444 F.Supp.2d 1049 [accord,
after 15 to 20 years the commitment offense has zero predictive value
of future dangerousness and therefore is not reliable evidence; thus,
parole decisions must be based on current threat to public safety.]
And of course, the most infamous case of recent, <u>Rosenkrantz v.
Marshall</u> (C.D. Cal 2006) 444 F.Supp.2d 1063, who after 19 years the
federal court and Los Angeles County Superior Court simultaneously
granted his writs and ordered his release.

The governor made absolutely no rational connection between
Petitioner's offense 20 years ago and his <u>current</u> threat to public
safety, the decision being arbitrary and capricious.

C.  <u>The Governor Makes Assumptions About Whether or not Stress Was
A Factor, Rejecting Expert Evidence and Substituting His Lay
Opinion.</u>

First the governor claims that Petitioner told the Board the
"commitment offense was committed as a result of significant marital
stress" (EXHIBIT 1, p. 2); and the Board "did not find that the
offense was the result of significant stress" (<u>Id.</u>).  No doubt
thinking Petitioner spoke of stress and the Board did not find stress
to be a factor influenced the governor's decision.  When reading
the transcript, although Petitioner did state he lost all hope
(HT 24), being under significant marital stress,   it is indeed
the Board that uses stress, the crime being "committed during a brief
period of extreme mental and emotional trauma" referring to
psychological evaluations by various forensic experts (HT 104), one
can only wonder if the governor, or whoever makes his decisions for
him, even read the transcript of Petitioner's hearing.

The governor's lay opinion is no substitute for forensic experts
and the Board who are presumably trained to weigh such matter.
Significant stress at the time of the offense is a mitigating factor
that weighs heavily in offsetting the offense (In re Scott II, supra,
133 Cal.App.4th, at 596; In re Wieder, supra, 2006 DJDAR 15795, at
15801 c. 2-15802 c. 1). The governor may have the discretion to
give evidence its own weight, but he cannot base his decision on
evidence contrary to the record, especially when forensic evidence
is the evidence. The governor's decision was arbitrary and
capricious.

D.  **Whether or Not Petitioner's Parole Plans for New Jersey Were
    "Unsettled" Is Not Evidence That Petitioner Is A CURRENT Threat
    To Public Safety.**

The last reason the governor used to justify his decision was
Petitioner's "parole plans remain unsettled. [] Furthermore,
although Mr. Boone applied to transfer his parole supervision to
New Jersey, it is uncertain whether the request will be granted"
(EXHIBIT 1, p. 2).

First, if the governor would have waited only two more weeks,
still leaving him days before his signature had to be stamped on
the decision, he would have received notice that Petitioner was indeed
accepted by New Jersey to transfer his parole. But he was in such
a rush to go skiing he rushed to judgment without all the facts and
evidence available to make an informed decision. All it would have
taken is a phone call like Commissioner Biggers made during
Petitioner's hearing to confirm that New Jersey has a compact with
California.

Secondly, the law mandates that Petitioner can parole to another

county "if that would be in the best interest of the public and the parolee" (Penal Code § 3003(b) if it would help the chances of success on parole (b)(2) or a verified existence of a work offer (b)(3). Petitioner had an offer of residence and a job in Santa Cruz County (HT 74), and he has no family or friends in San Bernardino County; therefore, it certainly would be in his best interest and increase his chances of success on parole to parole to Santa Cruz County. In 2001 the Board approved Petitioner's parole to Alameda County. The law has not changed, thus it was arbitrary for the Board, or the governor, to not approve parole to Santa Cruz County.  The Board was simply wrong, and the governor was simply looking for an excuse to justify the decision already made and abused his discretion by not using his power to "modify" the decision and parole Petitioner t Santa Cruz County.

    Thirdly, "the regulation requires an inmate have "<u>realistic</u> plans for release' (emphasis added [by court]) or to have 'developed marketable skills that can be put to use upon release" (<u>In re Andrade</u> (2006) 141 Cal.App.4th 807, 816).  The court continued: "Although the record recites the significant vocational training Andrade has received in prison, the Board's decision makes no mention of that training or the likelihood Andrade could put it to use once paroled" (<u>Id.</u>); so it was with Petitioner in the governor's decision.  The half of the regulation "or has developed marketable skills that can be put to use upon release" (Cal. Code Regs., tit. 15, § 2402(d)(8)), is a clause specifically for those like Petitioner, yet the governor, and Board, consistently ignore this clause in the regulation as an excuse to deny parole, and the courts keep letting them.  Petitioner

- 21 -

honorably served this country in the Marine Corps believing that
this is a nation of laws and not of men, and the laws apply equally
for all.  Apparently Petitioner was wrong.

Petitioner has not only realistic parole plans for Santa Cruz
County, but has multiple vocational skills he can put to use upon
parole, exactly as the regulations require.  This rationale by the
governor is nothing more than smoke and mirrors to justify his no
parole policy for political gain, going back to the application of
Penal Code § 3041.2 being unconstitutionally applied as a political
tool, this governor arbitrarily letting just enough life prisoners
out to escape judicial scrutiny.  When one honestly reviews the
Executive's decisions who is and who is not granted parole, there
is no rhyme or reason or any indication how parole statutes and
regulations are applied, every decision being arbitrary as though
by a flip of a coin.

Moreover, contrary to what the Board thinks, men do leave prison
every day with no parole plans, having no job offer or residence,
and it is parole's obligation to house them and help them find
employment.  The Board, nor governor, have a clue how paroles actually
works and the services offered, but rather believe paroles is only
to supervise.  This Court cannot turn a blind eye to what it sees
on the news, paroles providing housing at any expense to sexual
offenders.  The same obligation applies to Petitioner.  However,
Petitioner has his own money and only needs to be placed in the
community and he will obtain his own residence.

Petitioner was in the Marine Corps, stationed in California.
That was 20 years ago.  Other than Mrs. Gahar in Santa Cruz County,

- 22 -

Petitioner knows no one in San Bernardino.  No one.  The only person Petitioner knows in California is Shirley Gahar in Santa Cruz County. Petitioner asks, logically, does that mean he will be kept in prison for the rest of his life?  Governor Davis used the same excuse in 2002, now Governor Schwarzenigger uses the same excuse.  It is obvious from Petitioner's background and prison record, he is not a criminal, and certainly not a user of alcohol or drugs, thus not a threat to public safety.  The governor rushed to judgment, his decision being arbitrary and capricious.

Petitioner requests an evidentiary hearing so that he, and the court, can know exactly what paroles does and offers to help parolees succeed on parole.

## C O N C L U S I O N

For the foregoing reasons, Petitioner requests that the Court order the governor to show cause (not an informal response) why the writ should not be granted and Petitioner should not be discharged within ten (10) days of the Court's order, since excess custody credits far exceed any period of parole Petitioer could serve.

Date: ___3-7-07___

Respectfully submitted,

Donald W. Boone
Petitioner in pro per

- 23 -