# EXHIBIT 11

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

In the matter of:

DONALD W. BOONE,

    Petitioner,

Petition for Review
on Habeas Corpus.
_____/

CASE NO. _____
(Court of Appeal No. E043229,
 Fourth Appellate District;
 Super. Ct. No. SWHSS9290,
 County of San Bernardino)

# PETITION FOR REVIEW

TO: THE HONORABLE RONALD M. GEORGE, CHIEF JUSTICE, AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA.

Pursuant to California Rules of Court, Rules 28 and 29, Donald W. Boone (hereafter Petitioner), hereby petitions the Court for review following the decision of the Court of Appeal, Fourth Appellate District, Riverside, filed on June 12, 2007 (see ATTACHMENT A).

## QUESTIONS PRESENTED FOR REVIEW

The questions presented for review are:

1. DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING PETITIONER'S CLAIM THAT HIS RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN THE GOVERNOR'S DECISION TO REVERSE PETITIONER'S GRANT OF PAROLE, FOR THE SECOND TIME, WAS NOT SUPPORTED BY THE CORRECT STANDARD OF PROOF?

-1-

2. DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING PETITIONER'S CLAIM THAT HIS RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN THE TRIAL COURT SUMMARILY DENIED HIS EQUAL PROTECTION CLAIM THAT PENAL CODE § 3041.2 IS UNCONSTITUTIONAL IN ITS APPLICATION IN ITS APPLICATION?

3. DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING PETITIONER'S CLAIM THAT HIS RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN THE TRIAL COURT SUMMARILY DENIED HIS CLAIM THAT THE GOVERNOR'S DECISION TO REVERSE PETITIONER'S GRANT OF PAROLE VIOLATED PETITIONER'S CONTRACT WITH THE STATE AND FAILED TO MAKE ANY RATIONAL CONNECTION BETWEEN THE OFFENSE TWENTY YEARS AGO AND CURRENT THREAT TO PUBLIC SAFETY?

## NECESSITY FOR REVIEW

Petitioner submits that the issues raised by this Petition for Review concerns statewide importance. The first claim addresses the "standard of proof" at the Executive level of administrative decisions when a prisoner has a "liberty interest" attached to the proceedings. The second issue raises a claim that is a case of first impression that could only be raised at this time because a historical showing had to be made that, although Penal Code § 3041.2 is neutral on its face, the governor has NEVER requested to review a single case in which parole was denied. This claim required an EVIDENTIARY HEARING to develop the record. The third claim requires review because the superior courts and appellate courts in this state are grossly disparate in reviewing parole decisions and whether or not a prisoner's writ is granted or denied relies solely on which superior court and/or appellate district one is out of. This is especially true of the Third, Fourth, and Fifth Appellate Districts, especially the Fourth Appellate District, Riverside. The San Bernardino County Superior Court, as will be proved, fixated on the commitment offense

two decades in the past and failed to consider the circumstances and significant stress resulting in the offense, and Petitioner's exemplary postconviction record. The lower courts need direction from this Court (In re Andrade (2006) 141 Cal.App.4th 807, 823 fn3 ["need for Supreme Court intervention and clarification" in parole law]).

## FACTS OF THE CASE

The facts of this case are found in the writ of habeas corpus at pages 9 - 14, incorporated herein by reference. In short: On April 18, 1986, Petitioner arrived home to Twenty Nine Palms after a one year duty assignment overseas with the Marine Corps. When Petitioner entered his home he found his wife in the arms of another man, Jeffrey Crane. Over the course of the next two weeks Petitioner found out that his wife was neglecting their seven year old daughter, prostituting herself and having an affair with Crane. Petitioner went through two weeks of hell, and still, forgave his wife and tried to reconcile their marriage. On May 3, 1986, after a final effort to reconcile, Petitioner shot his wife, killing her instantly, then shot himself, but survived.

On July 14, 1986, an information was filed in the San Bernardino County Superior Court charging Petitioner with one count of second degree murder, the information alleging "he did kill Nhung My Boone, a human being, with malice aforethought" (see EXHIBIT 2). On August 22, 1986, Petitioner pled guilty to one count of second degree murder as alleged (see EXHIBIT 3).

On August 8, 2006, Petitioner was found suitable for parole (see EXHIBIT 6). On December 22, 2006, Governor Schwarzenegger

reversed (see EXHIBIT 1). The Governor, as stated by the trial court, based his decision on "some evidence" as the standard of proof. Moreover, and Petitioner believes an evidentiary hearing will prove, that no governor, since the implementation of Penal Code § 3041.2 in 1988, has once requested review or the Board of Parole Hearings Decision Review Unit sent a case for review in which a prisoner was denied parole.

## ARGUMENTS

1. DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING PETITIONER'S CLAIM THAT HIS RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN THE GOVERNOR'S DECISION TO REVERSE PETITIONER'S GRANT OF PAROLE, FOR THE SECOND TIME, WAS NOT SUPPORTED BY THE CORRECT STANDARD OF PROOF?

In his habeas petition, Petitioner claimed that the "standard of proof" the Executive is to use in determining to grant or deny parole is "a preponderance of the evidence." The trial court held this to be "contrary to the California Supreme Court's holding in In re Rosenkrantz (2002) 29 Cal.4th 616.

Although the Rosenkrantz decision holds the standard of review is "some evidence," the Court is ambiguous of what the standard of proof is. Two Appellate Courts have held that the standard of proof on Executive review of suitability findings by the Board is "a preponderance of the evidence". (In re Tripp (2007) ___ Cal.App.4th ___, 2007 DJDAR 5877, 5878 c. 1 (4/30/07); In re Morrall (2002) 102 Cal.App.4th 280, 302, citing Evidence Code § 115).

The United States Supreme Court, in Hamdi v. Rumsfeld (2004) 542 U.S. 507, held when a prisoner has a "liberty interest" (Id., at 529-533), that "some evidence" as a standard of proof "is ill

- 4 -

suited to the situation in which a habeas petitioner has received no prior proceedings before any tribunal and had no prior opportunity to rebut the Executive's factual assertions before a neutral decisionmaker" (Id., at 538).

In that this Court has held that a parole hearing is **not** a "disciplinary hearing", but rather "[i]n procedural and substantive terms, this type of determination is more analogous to the sentencing determination made by the court" (In re Roberts (2005) 36 Cal.4th 575, 587-588), the standard of proof is higher than a preponderance of the evidence. The United States Supreme Court has "mandated an intermediate standard of proof--'clear and convincing evidence'-- when the individual interest at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (Santosky v. Kramer (1982) 455 U.S. 745, 756, citation omitted). Clear and convincing evidence as the standard of proof is "necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with a significant deprivation of liberty or stigma" (Id., citations and internal quotation marks omitted).

No greater fundamental liberty interest exists than that to be free from involuntary restrained by one's government. This Court needs to settle what the standard of proof is for Executive determinations of parole suitability, a sentencing hearing. As it stands, with some California courts, the standard of proof, and review, is, "Because we say so."
///////
///////

- 5 -

2. DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING PETITIONER'S CLAIM THAT HIS RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN THE TRIAL COURT SUMMARILY DENIED HIS EQUAL PROTECTION CLAIM THAT PENAL CODE § 3041.2 IS UNCONSTITUTIONAL IN ITS APPLICATION IN ITS APPLICATION?

Since the implementation of Penal Code § 3041.2 in 1988, not once has the Board's Decision Review Unit forwarded a denial of parole to a governor for review, nor has a governor requested to review a denial of parole. Although neutral on its face, the law is being used exclusively for political gain and therefore "the incentive to give only pro forma consideration to the parole decisions is strong" (In re Dannenberg (2005) 34 Cal.4th 1061, 1105, dissenting opinion).

When it is alleged that a statute, although constitutional on its face, may be unconstitutional in it application, the state courts have "an obligation" to conduct a hearing into the matter to determine the facts (In re Rodriguez (1975) 14 Cal.3d 639, 648, quoting Minnisota ex rel Pearson v. Probate Court (1940) 309 U.S. 270, 277).

No greater evil of a government is that than to use a law unfairly against its citizens to keep them oppressed. All one need do is compare grants of parole prior to 1988 to see that Penal Code § 3041.2 is not being used for public safety, but for political safety, governors being pressured by victims' rights activists to deny parole, with a goal that all life prisoners die in prison, no matter how suitable for parole a person is.

This claim requires an evidentiary hearing to develop the record.

///////
///////

- 6 -

3. DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING PETITIONER'S CLAIM THAT HIS RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN THE TRIAL COURT SUMMARILY DENIED HIS CLAIM THAT THE GOVERNOR'S DECISION TO REVERSE PETITIONER'S GRANT OF PAROLE PAROLE, VIOLATED PETITIONER'S CONTRACT WITH THE STATE AND FAILED TO MAKE ANY RATIONAL CONNECTION BETWEEN THE OFFENSE TWENTY YEARS AGO AND <u>CURRENT</u> THREAT TO PUBLIC SAFETY?

The lower courts fixated on the commitment offense and did not consider the mitigating factors surrounding the commitment offense. Many of the Governor's reasons for reversing Petitioner's grant of parole are based on no more than hearsay that cannot be proved one way or the other. Regardless, the offense and the circumstances are two decades old, no longer having any predictability of CURRNT threat to public safety and no longer being "reliable" evidence. The Governor, and lower courts, failed to properly weigh the commitment offense against the passage of time.

Penal Code § 3041 mandates that a release date be set one year prior to the minimum term, unless the Board determines that "the timing and gravity of the current or past convicted offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual...." The statute does not call for denying parole indefinitely for political reasons. Parole can only be denied if the "current or past convicted offenses" are of such magnitude that at the time the minimum term is served a prisoner may still be a threat to public safety.

"The test is not whether some evidence supports the <u>reasons</u> the Governor cites for denying parole, but whether some evidence indicates a parolee's release <u>unreasonably endangers public safety</u>" (<u>In re Lee</u> (2006) 143 Cal.App.4th 1400, 1408, emphasis in original).

- 7 -

In reviewing a suitability determination, the Executive "must remain focused not on the circumstances that may be aggravating in the abstract but, rather, on facts indicating that release currently poses 'an unreasonable risk of danger to society' (§ 2402, subd. (a); accord, Pen.Code § 3041, subd. (b))" (In re Elkins (2006) 144 Cal.App.4th 475, 499).

The Appellate Court opined in In re Lee, supra, 143 Cal.App.4th, at 1412: "Besides not being especially atrocious, heinous or callous, Lee's crimes (second degree murder and attempted murder) have little, if any, predictive value for future criminality. Simply from the passing of time, Lee's crimes almost 20 years ago have lost much of their usefulness in foreseeing the likelihood of future offenses than if he had committed them five or ten years ago. (In re Scott, supra, 133 Cal.App.4th 573, 595 [] [past crime's value for predicting future crime diminishes over time]"), so can it be said of Petitioner's offense. See also In re Elkins, supra, 144 Cal.App.4th 475, 498-499; Biggs v. Terhune (9th Cir. 2003) 334 F.3d, at 915; Irons v. Carey (9th Cir. 2007) 479 F.3d 658, 665; Sanchez v. Kane 444 (C.D. Cal. 2006) F.Supp.2d 1049, 1062; Rosenkrantz v. Marshall (C.D. Cal. 2006) 444 F.Supp.2d 1063, 1084-1086; Martin v. Marshall (N.D. Cal. 2006) 431 F.Supp.2d 1038, 1047).

In other words, the offense cannot be viewed in a vacuum as though it is current, but is to be placed into perspective relative to time, "entailing primarily what a man is and what he may become rather then simply what he has done" (Greenholtz v. Inmates of Nebraska Correctional and Penal Institute (1979) 442 U.S. 1, 10).

The Governor also alleged that Petitioner's offense involved

- 8 -

"premeditation." It may be true that the Executive can consider factors the Board did not, but the Executive cannot nullify a plea agreement, a contract with the State, finding elements of a greater offense of which was neither found by a jury beyond a reasonable doubt or admitted to by Petitioner. Petitioner's contract with the State was for the minimum elements of the offense. Petitioner can only be punished for the elements of the offense as charged and agreed to (People v. Jerome (1984) 160 Cal.App.3d 1087; Cunningham v. California (2007) ___ U.S. ___, 127 S.Ct. 856; Blakely v. Washington (2004) 542 U.S. 296; Santobello v. New York (1971) 404 U.S. 257; Henderson v. Hogan (1976) 426 U.S. 637)

The Governor wrongly attributes findings by the forensic experts referred to by the Board that Petitioner was under "extreme mental and emotional trauma" when he murdered his wife to Petitioner, and states the Board did not find this in its decision. The Governor is wrong (see EXHIBIT 6, HT 104). It appears the only reason the Governor rejected the fact that Petitioner was under "extreme stress" is because, not carefully reading the transcript, believed that claim was made by Petitioner and not found by the Board.

As to the Governor believed Petitioner made a self-serving statement about stress, and it was not made by the Board, the Governor wrongly rejected "the role that such stress may have played in the commission of the crime [and] reflects the law's awareness of human nature"; to consider evidence of stress, "[t]his the Board is bound to do" (In re Wieder (2006) 145 Cal.App.4th 570, 590; In re Scott II, 133 Cal.App.4th 573, 596).

The Governor also cited Petitioner's lack of parole plans to

San Bernardino County, stating plans to parole to New Jersey were "unsettled."

Firstly, the Governor reversed the Board's decision two weeks before the deadline for New Jersey to respond, the response due January 4, 2007. Petitioner has been informed that New Jersey did accept the transfer.

Secondly, Petitioner is not a resident of California, but was only stationed in California, so Petitioner knows no one in San Bernardino County, but did, and does have parole plans for Santa Cruz County. The Board, however, focused on transfer to New Jersey so did not say anything about Santa Cruz. The Governor abused his discretion by not simply "modifying" the grant of parole, which is within his power, allowing Petitioner to transfer to Santa Cruz. Petitioner only need have "realistic plans for release' or have 'developed marketable skills that can be put to use upon release" (In re Andrade, supra, 141 Cal.App.4th, at 816). The record is replete with "marketable skills" that he can put to use upon release.

Thirdly, Petitioner has now been imprisoned 21 years. When conduct credits are factored in, 4 months per year, having constructively served 28 years. Even if Petitioner term were to be readjusted to the maximum for second degree murder, 21 years, he has exceeded any period of parole he may have had to serve, and is therefore entitled to be discharged (In re Smith (2007) ___ Cal.App.4th ___, 2007 WL 1267483 (Cal.App. 6 Dist, 5/2/07); Martin v. Marshall (N.D. Cal. 2006) 448 F.Supp.2d 1143 [excess in prison credits are to be deducted from parole]).

///////

C O N C L U S I O N

For the foregoing reasons, review should be GRANTED.

Dated: 16 June, 2007

Respectfully submitted,

*Donald W. Boone*
Donald W. Boone
Petitioner in pro per