Donald W. Boone, D-37952
Correctional Training Facility
P.O. Box 689 (ED-109L)
Soledad, CA 93960

Petitioner in pro se



IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DONALD W. BOONE,                          CASE NO. C 07-4724 PJH

              Petitioner,                 PETITIONER'S TRAVERSE TO
                                          RESPONDENT'S ANSWER TO ORDER
     v.                                   TO SHOW CAUSE; MEMORANDUM
                                          OF POINTS AND AUTHORITIES
ARNOLD SCHWARZENEGGER,

              Respondent.                 Judge: The Honorable
                                                 Phyllis J. Hamilton
_____/


        In this federal habeas corpus application, Donald W. Boone

(hereafter Petitioner), a prisoner of the state of California,

contends that the Governor unconstitutionally reversed, the grant

of parole on August 10, 2006, violating Petitioner's right to due

process and liberty interest in parole, doing so for the second time.

        The Court issued an Order to Show Cause on November 7, 2007,

Governor Schwarzenegger answered on Feburary 2, 2008. Petitioner

now traverses the Answer as follows:

                            A N S W E R

        Petitioner admits paragraphs 2, 4, 5, 6, 7, 14, and 16.

Petitioner denies and reaffirms the following in traversing the Answer

to the petition for writ of habeas corpus served on February 2, 2008:

                              - 1 -

I

In response to paragraph 1 of respondent's Answer, Petitioner
denies that he is lawfully in the custody of the California Department
of Corrections and Rehabilitation following his August 22, 1986
conviction for "first degree murder" in that he pled guilty to second
degree murder.  Although Petitioner's conviction for second degree
murder was lawful, the Governor's reversal, for the second time,
without a scintilla of evidence Petitioner is a CURRENT threat to
public safety, renders Petitioner's continued imprisonment unlawful
in violation of the Fifth and Fourteenth Amendments to the United
States Constitution.

II

In response to paragraph 3 of respondent's Answer, Petitioner
denies that a "restraining order" was in effect when he shot and
killed his wife, Nhung Boone.  After Petitioner was served with the
TRO, Mrs. Boone reunited with Petitioner, and in fact the two were
cohabiting at the time of the offense; therefore, nullifying the
TRO.  Petitioner vehemently denies that he ever sent Mrs. Boone
flowers with a card reading "We live[] together or die together.."
Although the Governor did not state this in his decision as a reason,
he does mention it in passing leading up to his decision.
"'[E]vidence underlying the Board's decision must have an indicia
of reliability'" (Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003),
citation omitted).  The allegation is lifted from a crime report,
being third-hand information, Phong Flores told the investigating
detective that Mrs. Boone told her... (Ans. EXHIBIT 3, p. 92).
According to the report, Mrs. Boone sent the card to her divorce

- 2 -

attorney.  Such a card would have been easy to recover, if it existed,
but it never did exist.  This said card is just one more of the many
prevarications of Mrs. Boone, and must be put to rest.  Parole
decision cannot be made based on third-hand hearsay, but only on
"reliable information" (Cal. Code Regs., tit. 15, § 2402(b)), which
hearsay is not.

### III

In response to paragraph 8 of respondent's Answer, Petitioner
is not raising a breach of his plea agreement, only that part of
that agreement was a 3 to 4 year parole (see Pet. EXHIBIT 5, p. 9);
and, in that Petitioner may have exceeded that, he may be entitled
to discharge (see Martin v. Marshall, 448 F.Supp.2d 1143, 1145 (N.D.
Cal. 2006).

### IV

In response to paragraph 9 of respondent's Answer, Petitioner
denies that he does not have a liberty interest in parole.  The
respondent's meritless and frivolous allegation is foreclosed by
McQuillion v. Duncan, 306 F.3d 895, 902-903 (9th Cir. 2003); Biggs
v. Terhune, 334 F.3d, at 915, supra; Sass v. California Board of
Prison Terms (hereafter Sass), 461 F.3d 1123, 1127-1128 (9th Cir.
2006).  Petitioner will make no further argument of this in his points
an authorities as, in that the issue is settled, it is a moot issue.

### V

In response to paragraph 10 of respondent's Answer, Petitioner
denies that he fails to make a case for relief under the Antiterrorism
Effective Death Penalty Act (AEDPA).  Applying California parole
law under the strictures of the United States Constitution, the Ninth

- 3 -

Circuit Court of Appeals recently held that the ultimate question under the "some evidence" standard of review is not whether some evidence supports the factors relied upon to reach the decision, but whether some evidence supports the conclusion: will the prisoner's "release unreasonably endangers public safety" (Hayward v. Marshall, ___ F.3d ___, 2008 WL 43716, *5 (9th Cir. 2008)). Based on the law, both state and federal, the State court's decision was based on an unreasonable interpretation of the facts, and was arbitrary and an abuse of discretion, unsupported by a scintilla of evidence that Petitioner is a CURRENT threat to the pblic.

## VI

In response to paragraph 11 of respondent's Answer, Petitioner denies he received all process due him simply because the Governor provided him with a detailed explanation for his reversal. Due process is violated when the decisionmaker makes no rational connection between the commitment offense and current threat to public safety. Petitioner will argue this point more fully in his memorandum of law.

## VII

In response to paragraph 12 of respondent's Answer, Petitioner denies that the Governor's decision does not violate Petitioner's right to due process. And, although Petitioner agrees with respondent that the "some evidence" does not apply to habeas corpus, but only in the context of prison disciplinary hearing, agreeing, but for different reasons for which an evidentiary hearing is requested, the Ninth Circuit has held that "some evidence" does apply to parole decisions, so until a case can be made for a higher standard of

review, the "some evidence" standard of review is to be applied
(Hayward v. Marshall, 2008 WL 43716, *5, supra; Sass, 461 F.3d, at
1128-1129, supra).

## VIII

In response to paragraph 13 of respondent's Answer, Petitioner
denies that the Governor properly considered the gravity of the
offense, considering the offense in isolation without considering
time and rehabilitation and significant stress mitigating the offense,
substituting his lay opinion for that of the forensic experts; and
Petitioner denies that the offense has not lost its predictive value
after 20 years, being less of a predictor in light of Petitioner
having no prior criminal record, and an exemplary postconviction
record. Petitioner will address this more fully in his points and
authorities.

## IX

In response to paragraph 15 of respondent's Answer, Petitioner
denies that his parole plans are still relevant because he is entitled
to discharge without parole. Petitioner will clearly illustrate
that, when good behavior custody credits are applied to the term
fixed for his commitment offense, he will have exceeded any period
of parole he may have had to serve in addition to his time in prison
(see Cal. Code Regs., tit. 15, § 2345 ["If any custody credits remain
after deducting it from the offense to which it applies, the remaining
credit shall be deducted from the parole period"], emphasis added).
That is California law, Petitioner only asks that it be applied to
him as implemented, nothing more, nothing less.

### X

In response to paragraph 17 of respondent's Answer, Petitioner denies that an evidentiary hearing is not necessary in this matter. An evidentiary hearing is necessary to demonstrate why "some evidence" as a standard of review is inappropriate for review of parole unsuitability decisions.  A parole hearing is not a prison disciplinary hearing, but is a sentencing hearing, and as such is entitled to the same constitutional protections as any sentencing hearing.  Thus, Petitioner respectfully requests an evidentiary hearing to argue and fully develop this claim.

### XI

In response to paragraph 18 of respondent's Answer, Petitioner denies that it is improper for any court to order Petitioner discharged.  Petitioner will address this claim more fully in his points and authorities.

### XII

In response to paragraph 19 of respondent's Answer, Petitioner expressly denies that he has not established any grounds for federal habeas relief.

### XIII

Except as expressly admitted above, Petitioner denies every allegation in the Answer, and specifically denies that his administrative, constitutional, and statutory rights were not violated when, for the second time, the Governor reversed Petitioner's grant of parole without any evidence that he is CURRENTLY a threat to public safety.

Thus, Petitioner respectfully requests that this Honorable Court

grant the application for federal habeas corpus, and, Petitioner's
custody credits calculated to date and if time in custody plus custody
credits exceed any period of parole applicable to Petitioner, order
Petitioner be discharged immediately; grant any other relief in the
furtherance of justice.

### MEMORANDUM OF LAW WITH POINTS AND AUTHORITIES

### A R G U M E N T

THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS CORPUS
PETITION WAS CONTRARY TO AND AN UNREASONABLE APPLICATION
OF CLEARLY ESTABLISHED FEDERAL LAW, AND BASED ON AN
UNREASONABLE DETERMINATION OF THE FACTS.

---

**A.   The State Court Decision Was Contrary to Clearly
Established Federal Law.**

Argument "A" of respondent's Answer, "The State Court Decisions
Were Not Contrary to Clearly Established Federal Law" at Answer,
pages 5:24-8:7 is based on procedural grounds that have been long
settled by the Ninth Circuit Court of Appeals. See McQuillion v.
Duncan, 306 F.3d 895, 900-903 (9th Cir.2002); Biggs v. Terhune, 334
F.3d 910, 914-915 (9th Cir. 2003); Sass v. California Board of Prison
Term (hereafter Sass), 461 F.3d 1123, 1126-1129 (9th Cir. 2006);
Irons v. Carey, 479 F.3d 658, 662-663 (9th Cir. 2007), reaffirmed
in Irons v. Carey, 505 F.3d 846 (9th Cir. 2007); and most recently
in Hayward v. Marshall, ___ F.3d ___, 2008 WL 43716, *4-5 (9th Cir.
2007g.

Simply, for the respondent to keep arguing this issue is
disingenuous, to say the least.  Petitioner will not engage the
Court's limited time and resources by responding to an argument that
is patently meritless.  However, Petitioner would respectfully request
that he be granted the right to reserve argument on this claim and

be given the opportunity to respond if it is an issue the Court wants

further briefing on and orders such briefing.

B.    The State Court Decision Upholding the Governor's Parole
      Reversal Was an Unreasonable Application of Clearly
      Established Federal Law; and, Unreasonable in Light of
      the Facts.

     In analyzing recent developments in California's parole law,

reviewing federal constitutional protections of the "some evidence"

standard under the application of California law, the Ninth Circuit

Court of Appeals recently concluded the suitability and unsuitability

factors set out in Cal. Code Regs., tit. 15, § 2402(c) and (d), in

the precedent setting case of <u>Hayward v. Marshall</u>, 2008 WL 43716,

*5, <u>supra</u>:

> "Even though these suitability and unsuitability factors are helpful in analyzing
> whether a prisoner should be granted parole, California courts have made it clear
> that the 'findings that are necessary to deem a prisoner unsuitable for parole,'
> <u>Irons [v. Carey]</u>, 505 F.3d [846,] at 851 [(9th Cir. 2007)], 2007 WL 2927359,
> at *3, are not that a particular factor or factors indicating unsuitability
> exists, but that a prisoner's release will unreasonably endanger public safety.
> <u>In re Dannenberg</u>, 156 Cal.App.4th 1387, 2007 WL 3408290, *9 (Cal. Ct. App. 2007),
> <u>modified</u>, 2007 Cal. App. LEXIS 1985, 2007 WL 4227229 (Cal. Ct. App. Dec. 3, 2007);
> <u>In re Lee</u>, 143 Cal.App.4th 1400, 1408, 49 Cal.Rptr.3d 931 (Cal. Ct. App. 2006);
> <u>In re Scott</u>, 133 Cal.App.4th 573, 595, 34 Cal.Rptr.3d 905 (Cal. Ct. App. 2005);
> <u>see</u> Cal. Penal Code § 3041(b) (providing that the Board 'shall set a release
> date unless...consideration of the public safety requires a more lengthy period
> of incarceration for this individual'). For our purposes, then, '[t]he test
> is not whether some evidence supports the reasons the Governor cites for denying
> parole, but whether some evidence indicates a parolee's release unreasonably
> endangers public safety. Some evidence of the existence of a particular factor
> does not necessarily equate to some evidence the parolee's release unreasonably
> endangers public safety.' <u>Lee</u>, 143 Cal. App.4th at 1408 (citations and footnotes
> omitted); <u>see also In re Elkins</u>, 144 Cal.App.4th 475, 499, 50 Cal.Rptr.3d 503
> (Cal. Ct. App. 2006) (<u>holding that the 'governor, in reviewing a suitability</u>
> <u>determination, must remain focused...on facts indicating that release currently</u>
> <u>poses 'an unreasonable risk of danger to society'</u>" (citing Cal. Code Regs. tit.
> 15, § 2402(a))); <u>Scott</u>, 133 Cal.App.4th at 591 ('<u>The factor statutorily required</u>
> <u>to be considered and the overarching consideration, is</u> "'public safety.'" (citing
> Cal. Penal Code § 3041(b))" (emphasis and ellipses in original).

     The United States Supreme Court, in the only case defining what

parole consideration is to be based upon, clearly stated that

"rehabilitation" is the defining factor:  The focus in parole

suitability is rehabilitation -- as articulated by the United States
Supreme Court: "The decision turns on...primarily what a man is and
what he may become rather than simply what he has done" (Greenholtz
v. Inmates of Nebraska Correctional and Penal Complex (hereafter
Greenholtz), 442 U.S. 1, 10 (1979)). "It is important that we not
overlook the ultimate purpose of parole which is a component of the
long-range objective of rehabilitation" (Id., at 13). The High Court
added, "The behavior record of an inmate during confinement is
critical in the sense that it reflects the degree to which the inmate
is prepared to adjust to parole release" (Id., at 15). Thus,
REHABILITATION could be said to be the Greenholtz doctrine. If a
prisoner has served "the minimum term, less goodtime credits" (Id.,
at 4; Penal Code §§ 190, 2930, et seq. [1986 ed.]), and there is
no evidence the prisoner is a CURRENT threat to the public, that
is, "rehabilitated," he or she is to be paroled (In re Rosenkrantz,
29 Cal.4th, at 655, supra; In re Sturm, 11 Cal.3d 258, 266 (1974)
[the ultimate question is "whether the inmate will be able to live
in society without committing additional antisocial acts"]).

      Prior to July 1, 1977, under California's indeterminate
sentencing law (ISL), all crimes carried indeterminate sentences.
Under the ISL, the penal model was rehabilitation, parole suitability
turned upon the reformation of the offender (In re Minnis, 7 Cal.3d
639, 644 (1972)). The California Supreme Court added, "The goals
of the parole system can best be achieved by 'the liberation of a
prisoner on parole at the earliest period when permitted by law"
(Id., quoting Roberts v. Duffy, 167 Cal. 629, 637 (1914)). That
was, of course, when parole decisions were based on public safety,

not political safety.  On July 1, 1977, however, there was a paradigm
shift in penal philosophy in California and the penal model became
punishment under the uniform determinate sentencing act of 1976,
commonly referred to the determinate sentencing law (DSL).  Parole
suitability under the DSL turns on uniform punishment based on the
crime.  Thus, penal statutes spelled out specific and uniform
punishments proportionate to the seriousness of the commitment
offense.

On November 7, 1978, by voter initiative, California passed
Proposition 7, creating a "'hybrid' sentencing scheme" relevant to
murder statutes (In re Dannenberg, 34 Cal.4th 1061, 1083-1084 (2005).
Under this hybrid sentencing scheme for first and second degree
murder, the two models, rehabilitation and uniform punishment, were
married.  In satisfying the punishment model of this hybrid,
legislatively prescribed matrices were implemented (see Cal. Code
Regs., tit. 15, § 2403, et seq.).  These legislatively prescribed
matrices, measuring uniofity of punishment proportionate to
culpability, manner of death and relationship of the perpetrator
to the victim, measure the seriousness of the commitment offense
relative to threat to public safety (see Cal. Code Regs., tit. 15,
§ 3041(b) ["The panel or board shall set a release date
unless...public safety requires a more lengthy period of incarceration
for this individual"]; Cal. Code Regs., tit. 15, § 2401 ["A parole
date set under this article shall be set in a manner that provides
uniform terms for offenses of similar gravity and magnitude with
respect to the threat to the public"]; § 2403(a) ["The base term
shall be established solely on the gravity of the base crime"]).

The question is, under this "hybrid" of punishment and rehabilitation for indeterminately sentenced prisoners under the DSL, when does it no longer serve any legitimate penological interest and violate due process to continue the imprisonment of the prisoner?

First and foremost, "[t]he factor statutorily required to be considered, and the overarching consideration, is 'public safety'" (Hayward v. Marshall, 2008 WL 43716, *5, supra, citations omitted).

Thus, on the one hand, even when an indeterminately sentenced prisoner satisfies the DSL part of the law, having served the minimum term, if he or she is not "rehabilitated," failing the ISL part of the law, parole is to be denied. On the other hand, when an indeterminately sentenced prisoner, by all evidence is rehabilitated, satisfying the ISL part of the law, but has not served his or her minimum term, parole must be denied (Penal Code § 190 ["(commencing with Section 2930...shall apply to reduce the minimum term...but the person shall not be released on parole prior to that time"]; Cal. Code Regs., tit. 15, § 2402 ["A prisoner shall not be released before the minimum eligible parole date"]; § 2000(b)(67) ["Minimum Eligible Parole Date (MEPD). The earliest date on which an ISL or life prisoner may legally be released on parole. ...the determinate sentence release date is the MEPD"]).

Petitioner's MEPD was established by the Board of Parole Hearings (hereafter Board) to be December 4, 1996 (see Pet. EXHIBIT 2, HT 2:14-16). What is required, however, in the case of one such as Petitioner who is not only rehabilitated, but has surpassed his MEPD and the legislatively prescribed uniform punishment proportionate to the commitment offense (see HT 101:21-102:2 ["we used the matrix

- 11 -

of 2(b), which was because there was a prior relationship...she was
your spouse.  B, there was a direct or victim contribution.  Death
was almost immediate or resulted at least partially from the
contributing factor"; Cal. Code Regs., tit. 15, § 2403(c)(B-II)
17-18-19 years).  Thus, Petitioner has not only surpassed his MEPD
by 10 years at the time of the Governor's reversal, and his minimum
sentence of 15 years by 4 years, but also, based on the commitment
offense's threat to public safety, surpassed the legislatively
prescribed punishment by 2 years (now by 3 years).

Prior to Hayward v. Marshall, 2008 WL 43716, supra, the Ninth
Circuit noted: "that in all the cases in which we held that a parole
board's decision to deem a prisoner unsuitable for parole solely
on the basis of his commitment offense comports with due process,
the decision was made before the inmate had served the minimum number
of years required by his sentence" (Irons v. Carey, 479 F.3d 658,
665 (2007).  Neither Irons, Biggs, nor Sass were in the position
of Petitioner: none had served their minimum term.

Petitioner, on the other hand, has exceeded his minimum term,
and legislatively prescribed punishment, at the time of the Governor's
reversal, thus Petitioner is similarly situated to Hayward (see also,
e.g., Rosenkrantz v. Marshall, 444 F.Supp.2d 1063 (C.D. Cal. 2006),
incarcerated 21 years, writ granted; Sanchez v. Kane, 444 F.Supp.2d
1049 (C.D. Cal. 2006), incarcerated 18 years, writ granted; Martin
v. Marshall, 431 F.Supp.2d 1038 (N.D. Cal. 2006), incarcerated 27
years, writ granted; Willis v. Kane, 458 F.Supp.2d 1126 (N.D. Cal.
2007), incarcerated 22 years, writ granted; Brown v. Kane, Slip Copy,
2007 WL 1288488 (N.D. Cal. 2007), incarcerated 28 years, writ granted;

Blankenship v. Kane, Slip Copy, 2007 WL 1113798 (N.D. Cal. 2007),
incarcerated 24 years, writ granted; Pirtle v. California Board of
Prison Terms, Slip Copy, 2007 WL 1544620 (E.D. Cal. 2007 [adopting
magistrate judge's findings and recommendations]), incarcerated 22
years, writ granted). And there are many others Petitioner does
not have copies of, but one thing they all have in common, is the
prisoners surpassed their minimum terms and, by all evidence,
rehabilitated.

There is no question Petitioner has surpassed his minimum term,
satisfying the legislatiely prescribed punishment for the commitment
offense and the commitment offense, after twenty years, no longer
having probative value in predicting a current threat to the public.
The only question is, therefore, is Petitioner rehabilitated.

a.   The commitment offense is no longer reliable evidence
     of current threat to public safety.

The respondent argues that the Governor's decision to reverse
Petitioner's grant of parole was properly upheld by the state court
because "[t]he Governor relied on facts from the police report and
Boone's testimony at his 2005 subsequent parole consideration hearing
in finding that the gravity of the commitment offense was alone
sufficient to reverse Boone's parole grant" (Ans., p. 10:11-14).

The respondent, in that Petitioner has exceeded his minimum
term and all evidence supports his rehabilitation, makes no rational
connection between the commitment offense and his current threat
to public safety (In re Roderick, 154 Cal.App.4th 242, 264 (2007);
In re Tripp, 150 Cal.App.4th 306, 313 (2007) ["It violates a
prisoner's right to due process when the Board or Governor attaches
significance to evidence that forewarns no danger to the public or

- 13 -

relies on an unsupported conclusion"]).

"The Governor's assumption that a prisoner may be deemed
unsuitable for release on the basis of the commitment offense alone
is correct (citation, footnote ommitted), but that proposition must
be properly understood.  The commitment offense is one of only two
factors indicative of unsuitability a prisoner cannot change (the
other being his 'Previous Record of Violence.'" (In re Scott II,
133 Cal.App.4th 573, 594-595 (2005)).  The Scott court opined:
"Reliance on such an immutable factor 'without regard to or
consideration of subsequent circumstances' may be unfair (citation),
and 'runs contrary to the rehabilitative goals espoused by the prison
system and could result in a due process violation.' (Biggs v. Terhune
(9th Cir. 2003) 334 F.3d 910, 917)" (In re Scott II, 133 Cal.App.4th,
at 595, supra; In re Elkins, 144 Cal.App.4th 475, 496 (2006) [review
denied, depublication denied]).  "Therefore, a life term offense
or any other offenses underlying an indeterminate sentence must be
particularly egregious to justify the denial of a parole date" (In
re Rosenkrantz, 29 Cal.4th, at 683, supra, citation omitted, emphasis
added).

In determining a prisoner's parole unsuitability, the Governor's
decision not only must be supported by "some evidence" that the
prisoner is a "current" threat to public safety, but in doing so
the prisoner "is entitled to have his application for these benefits
'duly considered' based upon an individualized consideration of all
relevant factors" (In re Rosenkrantz, 29 Cal. 4th, at 655, supra;
In re Minnis, 7 Cal.3d, at 645, supra; In re Scott II, 133
Cal.App.4th, at 590, supra [the Governor's decision must reflect

"the specified factors as applied to the individual prisoner in accordance with applicable legal standards"]). The Governor makes nothing more than a conclusory statement, pointing to no evidence and making no rational connection between Petitioner's commitment offense 21 years ago and a current threat to the public. Moreover, the Governor misstates the facts and minimizes the stress Petitioner was under when he committed the offense, denying Petitioner the "individualized consideration" constitutionally due him.

The Governor is simply wrong, apparently not reading the Board's decision, when he states that the Board "did not find that the offense was the result of significant stress" (Pet. EXHIBIT 1, p. 2). The Board, in finding Petitioner parole suitable, based upon opinions by the forensic experts, found Petitioner committed the offense "during a brief period of extreme mental and emotional trauma" (HT 104:8-15), then proceeded to state exactly what created that "extreme mental stress and emotional trauma." While the Governor is free to give conflicting evidence the weight he thinks the evidence deserves, and choose one over the other, in case at bench there is no conflicting evidence that Petitioner was under significant stress, thus the untrained lay opinion of the Governor over forensic experts, and the Board relying on those experts, was arbitrary (In re Barker, 151 Cal.App.4th 346, 367 (2007); Sanchez v. Kane, 444 F.Supp.2d, at 1061, supra [the Board's finding on this factor was not "rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Therefore, this reason proffered by the Governor is improper and cannot support his decision"]).

The Governor is bound by the same regulations that guide the

Board in making decisions (Hayward v. Marshall, 2008 WL 43716, *5,
supra). Being under significant stress when committing the offense
is a factor weighing in favor of suitability (Cal. Code Regs., tit.
15, § 2402(d)(4) ["The prisoner committed the crime as the result
of significant stress in his life, especially if the stress has built
up over a long period of time."] The stress Petitioner was under
from the moment he walked in the door of his home from overseas
duty finding his wife in the arms of another man was relentless over
the next two weeks, culminating in, what was to be, a murder suicide,
Petitioner surviving only by the grace of God. The Governor's
mitigation of the stress Petitioner was under, his determination
not being supported by any contravening evidence but simply his lay
opinion, denied Petitioner individualized considertion (In re Scott
II, 133 Cal.App.4th, at 596, supra; In re Lee, 143 Cal.App.4th, at
1214, supra, In re Weider, 145 Cal.App.4th, at 587, supra; Pirtle
v. California Board of Prison Terms, Slip Copy, 2007 WL 1140817,
*14 (E.D. Cal. 2007), findings and recommendations adopted, Slip
Copy, 2007 WL 1544620 (E.D. Cal. 2007).

     Regarding evidence relied upon by the Governor taken from the
"police reports," said "evidence" is third-hand hearsay. Petitioner
vehemently denies that he ever sent his wife roses with a card stating
"together we live or together we die." "In making this finding,
the Governor relied on statements made in a 198[6] [police report]
rather than petitioner's statements at his parole hearing. .... Thus,
this finding is not based on 'some evidence'" (Sanchez v. Kane, 444
F.Supp.2d, at 1061, supra).

     Moreover, "[i]n stating that Petitioner's crime was premeditated,

the Governor appeared to be addressing the standard set forth in
<u>In re Rosenkrantz, 29 Cal.4th at 658, 683</u>, that when the Board finds
parole unsuitability based solely on the facts of the commitment
offense, it must cite some evidence of factors beyond the minimum
elements of that offense.  However, the Governor's characterization
of Petitioner's actions as premeditated is incorrect because the
trial court found that the offense was murder in the second degree"
(<u>Blankenship v. Kane</u>, Slip Copy, 2007 WL 1113798, *7, <u>supra</u>; see
Pet. EXHIBIT 5, pp. 6-9).  Petitioner entered into a contract with
the state of California to plead guilty to and be punished
proportionate to second degree murder, with the possibility of parole.
All the facts were known at the time of the plea.  The Governor cannot
now nullify the contract between Petitioner and the state because
he does not like the outcome.

        Initially the egregiousness of the offense may be used to deny
parole, after 15 to 20 years, however, the commitment offense in
and of itself loses probative value in predicting current or future
dangerousness (<u>In re Dannenberg</u>, 156 Cal.App.4th 1387, 1399 (2007);
<u>In re Roderick</u>, 154 Cal.App.4th, at 277, <u>supra</u>; <u>In re Barker</u>, 151
Cal.App.4th, at 372, <u>supra</u>; <u>In re Lee</u>, 143 Cal.App.4th, at 1412,
<u>supra</u>; <u>In re Elkins</u>, 144 Cal.App.4th, at 500, <u>supra</u>; <u>In re Scott
II</u>, 133 Cal.App.4th, at 595, <u>supra</u>; <u>Rosenkrantz v. Marshall</u>, 444
F.Supp.2d, at 1084, <u>supra</u>; <u>Sanchez v. Kane</u>, 444 F.Supp.2d, at 1062
[in accord, after 15 to 20 years the commitment offense has zero
probative value in predicting future threat to public safety]).

        In that it has been established that Petitioner has exceeded
his minimum term by several years, and the commitment offense itself

has zero predictability of current or future threat to public safety,
let us now turn to the question of Petitioner's rehabilitation.

"Not only does the passage of time in prison count for something,
exemplary behavior and rehabilitation in prison count for something
according to Biggs and Irons. Superintendent v. Hill's standard
might be quite low, but it does require that the decision not be
arbitrary, and reliance on only the facts of the crime might
eventually make for an arbitrary decision" (Willis v. Kane, 458
F.Supp.2d, at 1130, supra; see also In re Dannenberg, 156 Cal.App.4th
1387, at 1401 (2007)):

> "It is not the mere passage of time that deprives Dannenberg's commitment offense
> of predictive value with respect to the risk he may pose to society. The quantity
> and quality of Dannenberg's consistent and spotless record of upstanding conduct
> for the last 20 years, coupled with the absence of any negative factors and the
> presence of every conceivable favorable factor, combine to eliminate any modicum
> of predictive value that his commitment offense once had. .... Consequently,
> while there is some evidence that Dannenberg's commitment offense was 'especially
> heinous,' when measured against the minimum elements of second degree murder,
> the Governor's decision violates due process because there is no longer any
> evidence that, solely due to the nature of Dannenberg's offense, he currently
> poses an unreasonable risk of danger to society." Emphasis in original.

Every suitability factor found in Cal. Code Regs., tit. 15,
§ 2402(d), save § 2402(d)(5), battered woman syndrome, weigh in
Petitioner's favor: § 2402(d)(1), no juvenile record; § 2402(d)(2),
stable social history; § 2402(d)(3) remorse; § 2402(d)(4), motivation
for the crime, an unfaithful wife, prostituting herself and neglecting
their 7 year old daughter, threats from her paramour, creating
significant stress; § 2402(d)(6), no criminal history; § 2402(d)(7),
age, Petitioner is 54 years old, reducing the probability of
recidivism; § 2402(d)(8), contrary to the Governor's protestations,
Petitioner does have "realistic plans for release" and, something
the Governor did not consider, "marketable skills that can be put

- 18 -

to use upon release"; and § 2402(d)(9), Petitioner's institutional
behavior is exemplary. Summing up Petitioner's suitability, it is
the opinion of forensic experts, "If released to the community, his
violence potential is estimated to be no more than the average citizen
in the community. This assessment echoes the conclusions of Dr.
Terrini in his 2000 board report" (Pet. EXHIBIT 7, p. 3). Dr. Stack
concludes: "There are no significant risk factors for this inmate
that would be precursors to violence for this individual. Again,
the reader is referred to Dr. Terrini's 2000 report" (Id., p. 4).

      Petitioner has been cleared, at least as far back as 2000 by
forensic experts, not to be a threat to public safety, and two Board's
and two decision review units have found Petitioner not to be a threat
to public safety, first in 2001, only to be reversed by then Governor
Davis, who had a <u>sub</u> <u>rosa</u> no parole policy (<u>Martin v. Marshall</u>, 431
F.Supp.2d, at 1048-1049, <u>supra</u>), and again by Governor Schwarzenegger,
who, under political pressure, has adopted a no parole policy.

      Thus, Petitioner has never committed another crime other than
this one, which was situational. Petitioner's social history is
extremely stable, maintaining relationships with family and friends
throughout the years of his incarceration. Psychological
evaluations by forensic experts consistently, without contradiction,
repeatedly found that Petitioner does not suffer from a mental illness
and makes sound judgments. Petitioner's prison record is exemplary,
with only a single CDC 115 that was occasioned by Petitioner
disobeying a direct order that, if complied with, would have resulted
in violence against Petitioner. Petitioner does have realistic parole
plans, and has obtained a number of vocational trades while

incarcerated to enhance his success on parole. Petitioner has taken
every available opportunity of self-help and therapy, when available,
and has been repeatedly praised for his attitude and comportment
over the years. Petitioner is remorseful, and has gained insight
into his past behavior and has made changes in his personality to
avoid any like future situation.

Petitioner was a model citizen, honorably serving his country
in the Marine Corps for 14 years when he returned home from overseas
duty to find his wife in the arms of another man, the murder of his
wife being a situational crime. Petitioner has lived an exemplary
life in one of the most stressful environments known to man over
the past 22 years without incident, clearly demonstrating his
commitment offense, this single act of violence, was an aberration
in his life.

Simply, there is no evidence Petitioner is not rehabilitated,
thus it serves no legitimate penological interest for his continued
imprisonment, violating his right to due process in his liberty
interest in parole.

**b.    The Governor abused his discretion when he blocked parole
based on lack of parole plans for California.**

The other reason the Governor reversed Petitioner's grant of
parole was because, the Governor acting too soon, was of the belief
that New Jersey did not accept Petitioner and the Board did not
approve Petitioner's alternate parole plan to Santa Cruz County,
California (Pet. EXHIBIT 1, p. 2).

"[B]ased on its clear language, the regulation's requirement
that an inmate have parole plans is limited to requiring realistic
plans" (In re Andrade, 141 Cal.App.4th 807, 817 (2006). Realistic

plans does not contemplate "iron clad plans" (Id.).

The fact is, New Jersey had until January 4, 2007, to accept
Petitioner's transfer of his parole, and did accept Petitioner, and
the Governor's decision was not due until January 8, 2007. The
problem with the Governor's decision, he was in a hurry to go on
a Christmas skiing trip, much publicized when he broke his leg, that
he did not wait the usual 30 days to make his decision, which would
have been within the time New Jersey responded, but rushed to
judgment, reversing on December 21, 2006.

The only reason the Board did not approve, actually, not say
one way or the other about Petitioner's transfer to Santa Cruz County
(Pet. EXHIBIT 2, HT 65:8-66:13), was because the focus, being that
Petitioner is from New Jersey, was on New Jersey. No other reason.
California law clearly allows for parole to a county other than the
county of last residence if it will enhance a prisoner's chances
to succeed on parole (Penal Code § 3003(b)). Additionally, the
Governor has the authority not to only reverse a grant of parole,
but to also modify a decision (Penal Code § 3041.2(b)). Thus, the
Governor could have just as easily modified the decision and deferred
parole upon approval of parole plans by the Department of Corrections
and Rehabilitation.

However, parole is irrelevant for Petitioner in that, time of
incarceration has exceeded the term fixed for his commitment offense.
The Board fixed Petitioner's net term of imprisonment at 168 months
(HT 105:16-25). Fixing the term at a total of 240 months, deducting
72 months, for a net term of 168 months. Assuming Petitioner's parole
was at the 4 years agreed to in the plea agreement (EXHIBIT 5,

- 21 -

p. 9:19-20), that is 48 months.  That would leave Petitioner with
an excess of 24 months (that is not including the additional calendar
year plus credits since the decision, or the time it will take to
make a decision by the Court).

The Board's own regulation clearly state: "If any custody credit
remains after deducting it from the offense to which it applies,
the remaining credit shall be deducted from the parole period" (Cal.
Code Regs., tit. 15, § 2345).  See Martin v. Marshall, 448 F.Supp.2d
1143, 1145 (N.D. Cal. 2006); In re Smith, Slip Copy, 2007 WL 1267483,
*4-6 (2007), although depublished, explaining In re Ballard, 115
Cal.App.3d 647 (1981); In re Randolph, 215 Cal.App.3d 790 (1989);
In re Reina, 171 Cal.App.3d 638 (1985); In re Anderson, 136 Cal.App.3d
472 (1982)) and why Smith was entitled to discharge and not parole.
Petitioner is exactly situated to Smith and is entitled therefore
to the same exact remedy.

If, the Court should decide that Petitioner still has a period
of parole, then the Court may grant the writ and parole of Petitioner
pending acceptance of transfer of parole to New Jersey.  However,
Petitioner believes he is entitled to discharge and unconditional
release (McQuillion v. Duncan, 342 F.3d 1012 (9th Cir. 2003), in
general; affirming the district court's order of immediate release
(McQuillion v. Duncan, 253 F.Supp.2d 1131, 1135-1136 (E.D. Cal. 2003);
Martin v. Marshall, 448 F.Supp.2d, at 1145, supra).

Petitioner wants no more than the law provides for, nor does
he want any less.  The law provides that, in Petitioner's situation,
that he be discharged.  Petitioner is entitled to the full application
of the law to his case.

c. **The state court decision was not only contrary to clearly established federal law, but unreasonable in light of the facts.**

The Governor's decision was unsupported by any evidence that Petitioner is a current threat to public safety. The state court merely rubber stamped the Governor's decision, being fixated on the offense, opining, "the facts and circumstances of the crime...demonstrate a needless and senseless killing of the Petitioner's wife because she wanted to terminate her marriage to the Petitioner" (EXHIBIT 8, p. 1). If it were only that simple. Like the Governor, the state court ignores the circumstances precipitating the commitment offense.

Petitioner claimed that, not judicial review, which is "some evidence," but the Governor's decision itself, the standard of proof must be a preponderance of the evidence. The state court ruled that the claim is "contrary to the California Spreme Court's holding in In re Rosenkrantz 29 Cal.4th 616" (EXHIBIT 8, pp. 1-2). Rosenkrantz addresses the standard of judicial review (Id., at 654-658 ["the 'some evidence' standard of review is applicable to judicial review of a Board's decision"], but clearly did not address the standard of proof, which is "a preponderance of the evidence" (see In re Tripp, 150 Cal.App.4th, at 312, supra; In re Morrall, 102 Cal.App.4th 280, 302 (2002); Evidence Code § 115; Cal. Code Regs., tit. 15, § 2000(b)(50)).

Moreover, the state court, like the Governor, did not follow the controlling case outlining when the commitment offense no longer is a reliable predictor of current threat, nor did either make a rational connection between the commitment offense 21 years ago and Petitioner's current threat to the public (In re Lee, 143 Cal.App.4th,

at 1408-1412, supra; see also Hayward v. Marshall, 2008 WL 43716,
*5-7, supra), failing to weigh Petitioner's time of imprisonment
and rehabilitation (Greenholtz, 442 U.S., at 10, 13, 15, supra.

Thus, the state court decision was contrary to clearly
established federal law, and unreasonable in light of the facts,
being arbitrary, violating Petitioner's right to due process.

### C O N C L U S I O N

For the foregoing reasons, it is respectfully requested that
this Honorable Court grant the writ, finding that in the interest
of justice, in the spirit and intent of the law as set forth in Penal
Code § 3041, that when an indeterminately sentenced prisoner has
satisfied his or her minimum term proportionate to the commitment
offense, the offense in and of itself, without more, e.g.,
postconviction behavior, is no longer some evidence of current threat,
and to satisfy the spirit and intent of the law, suitability or
unsuitability then must turn on rehabilitation.  It is further
requested that the Court grant Petitioner's writ, unconditionally,
and order that the California Department of Corrections total his
conduct credits within ten (10) days, and, if exceeding the term
fixed by the Board, 168 months, that he be immediately discharged,
or, if he has any time left on parole, that he be paroled as soon
as New Jersey reaffirms that it will accept him for parole and
arrangements can be made to deliver Petitioner to New Jersey.

WHEREFORE, for the foregoing reasons it is respectfully requested
that the writ be granted.

DATED: _FEBRUARY 25, 2008_

                                        Respectfully submitted,

                                        _Donald W. Boone_
                                        Donald W. Boone
                                        Petitioner in pro se

## PROOF OF SERVICE BY MAIL

CASE NAME:  BOONE v. SCHWARZENEGGER

CASE NO. :  C 07-4724 PJH

    I, Donald W. Boone          , hereby declare that I am a party
to the above titled action and am over the age of eighteen (18),
and I did serve a true copy of the following:

    PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER
    TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS
    AND AUTHORITIES

by placing a true copy in an envelope with first class postage fully
prepaid and said envelope surrendered to correctional staff at the
Correctional Training Facility for delivery to the prison mail room
and therefrom delivered to the local United States Post Office the
next business day from which there is postal service between the
place of mailing and the addressee:

    Steven G. Warner
    Deputy Attorney General
    455 Golden Gate Ave., #11000
    San Francisco, CA 94102

    I declare under penalty of perjury that the foregoing is true
and correct, doing so this 27th day of   February  , 2008, at
Soledad, California.

                                Donald W. Boone

DonALD W. Boone, D-37952
CTF-EAST DORM (CED-104)
P.O. Box 689
SoleDad, CA 93960

LEGAL MAIL

CASE no. C 07-4724 PJH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT of California
450 GolDEN GATE Ave.
SAN FRANCISCO, CA 94102